| 14 | 557 |
| 43 | 715 |
| 14 | 557 |
| 46 | 130 |
| 14 | 557 |
| 65 | 87 |

## M. K. & T. Railway Co. v. M. G. Brown.

1. Justices Courts; *Pleading; Bill of Particulars.*  It is sufficient if a bill of particulars in case before a justice states the essential facts, no matter how rudely and inartistically, yet so that the defendant is not misled, but clearly informed of the exact claim made upon him.

2. Contract; *Contracting Party; Memorandum; Unnamed Principal.* Where the general manager of a railroad company directs an assistant to have certain work about the railroad done, and in pursuance thereof the assistant makes a contract with a third party to do the work, and a memorandum of the contract is reduced to writing, in which it is simply recited that such third party will do the work, without mentioning for whom, for a certain sum, under the direction of the engineer of the company, which memorandum is signed by the third party, and by the assistant, without any designation of his office, or the capacity in which, or the party for whom he makes such contract, but also without any express assumption of personal liability, *held*, that it was the contract of the company.

3. Laborers on Railroads; *Statute of 1872.*  Chapter 136 of the laws of 1872, to protect laborers, mechanics and others, in the construction of railroads, applies not merely when a railroad company is engaged in the construction of its first and main track, but also wherever it is enlarging its road by the addition of side-tracks.

4. —————— *Bond; Liability of Railroad Company.* A railroad company failing to take the bond required by said statute is liable not merely to the laborers personally, but to any persons to whom they may transfer their claims.

*Error from Labette District Court.*

BROWN brought suit in his own name as plaintiff against the *M. K. & T. Railway Co.* as defendant. The following is plaintiff's bill of particulars, originally filed in a justice's court:

(*Title.*) "The plaintiff M. G. Brown says, that the Missouri, Kansas and Texas Railway Company was on the 18th of November 1872, and has been ever since, and is now, a corporation duly organized under the laws of the state of Kansas, and was then and has been ever since, and is now doing business as such corporation in the county of Labette and state aforesaid; that said Railway Company did on the 18th of November 1872 contract with one McLeod to construct a certain part of its road in said county and state, to-wit, the grading between and for certain tracks or parts of said company's road, hereinbefore stated, and for such constructions the said defendant company did agree to and did pay to the said McLeod a large sum of money, to-wit, 21 cts. per cubic yard, and one cent per yard overhaul amounting to $———. The defendant company failed to take and did not take from said McLeod a good and sufficient bond as required by law, or any bond conditioned that he would pay all laborers, mechanics and material-men, and persons who might supply such contractor with provisions or goods of any kind, all just debts due to such persons, or any person to whom any part of such work is given, incurred in carrying on such work. The plaintiff further says that said W. B. McLeod did draw on him certain orders in favor of certain persons, for goods and provisions for said McLeod, and used by said McLeod in constructing said defendant's road, or part of said road named therein, which persons performing labor on the grade and works hereinbefore stated, and others with them, were furnishing provisions to said McLeod and the men in his employ. The following are copies of said orders, and are attached hereto and made a part hereof, marked ' A.' " [*Here follow copies of seven orders on Brown, signed "W. B. McLeod," and one note payable to S. G. Beekman, also signed by McLeod. After which the bill of particulars proceeds:*] "Plaintiff says

that he paid for said note in goods and provisions. That said Beekman was a laborer in the employ of the defendant McLeod in constructing the grade for defendant company hereinbefore stated, and that it remains wholly unpaid, and said McLeod refused to pay the amount justly due him on said note. That the plaintiff paid to said persons named in said orders the amounts thereof in goods and provisions, and that none of said orders have ever been paid to this plaintiff by said McLeod, nor by the persons therein named. Wherefore plaintiff prays judgment against the defendant for $19.50 with interest thereon from the 9th of April 1873, and for $40.35 with interest thereon from March 25th 1873."

The action was tried in the district court, on appeal, at the March Term 1874. Judgment in favor of *Brown*, and the *Railway Company* brings the case here on error.

*David Kelso*, for plaintiff in error, submitted that no contract was made by the Railway Company with any one, and certainly not with Brown, nor with McLeod. If there was a contract at all, it was a contract made by the general manager to let a contract to Stevens to grade the grounds about the passenger depot at Parsons, fill up the low places between tracks, and round the grounds, so as to give better drainage. This contract Stevens sublet to one McLeod, who did the work and got his pay for it. The memorandum of agreement made by Stevens and McLeod, shows that the work was simply for "grading between tracks." It would seem to be an outrage on the English language to construe that contract to have the effect of one to build a railroad, or part of one, or that it was a contract between the railroad company and McLeod. Again, Brown was not a laborer, a mechanic, or a material-man; nor did he supply McLeod, (the supposed contractor,) with provisions or goods. He paid some of McLeod's personal orders, and bought a note given by McLeod for his own debt. The laborers, mechanics, and material-men were all paid. There was no contract nor privity of contract between Brown and the plaintiff in error, and under no just construction of the act of 1872, (ch. 136, p. 286,) can Brown maintain his action against the Railway Company for any

omission by the company to take a bond of indemnity from McLeod.

*Davis & Talbot,* for defendant in error, urged that the goods or provisions furnished by Brown were so furnished by him to the men *who at that time were actually engaged* in the construction of a "part" of the company's railroad. When Brown supplied contractor McLeod's employes or laborers with "goods and provisions," at his request, he, in contemplation of law, supplied the contractor himself. Stevens had the authority as agent of the Railway Company to make contracts for the work, and the contract he made with McLeod was the contract of the company. The action is within the act of 1872. Brown's claims are "just debts due him."

The opinion of the court was delivered by

BREWER, J.: This was an action originally commenced by Brown before a justice of the peace, seeking to hold the railway company, for debts created by one W. B. McLeod, under and by virtue of ch. 136 of the laws of 1872. That act is entitled, "An act to protect laborers, mechanics and others in the construction of railroads," and provides that a railroad company shall take a bond with certain conditions from any person to whom it lets a contract for the construction of its road, or any part of it, or become itself liable to the laborers employed by him. Four principal questions are presented by counsel for the company — first, was the bill of particulars sufficient? second, was there any contract between the company and McLeod for the doing of any work? third, if there was a contract, was the work contracted for such as is embraced within the terms of the act? and fourth, were the debts also within its terms? Of these in their order:

I. Was the bill of particulars sufficient? It must be remembered that pleadings in a justice's court are not to be subjected to the same strictness of construction as those in the upper courts. *Lobenstein v. McGraw,* 11 Kas., 645; *Kaub v.*

*Mitchell*, 12 Kas., 57. So that if the essential facts are stated in such a way that the defendant cannot be misled as to the real claim against him, the bill must be taken as sufficient. Tried by this rule, the bill is plainly sufficient. Indeed, we think it would stand a stricter test. It alleges a contract between the company and McLeod, that the company failed to take any bond; that for work done under that contract McLeod drew certain orders in favor of the laborers upon plaintiff, which he filled, and also gave to one of such laborers a note which plaintiff bought, and gives copies of the orders and note, and alleges that neither the orders nor the note have ever been paid. It is true, the paragraph which alleges the drawing of the orders is a little bungling and confused, (though perhaps that may be due to an error of the copyist,) but the criticism to which it is properly subject is grammatical rather than legal.

II. The evidence of a contract was clear and abundant. E. B. Stevens, who testified that he was in the employ of defendant, and styled "Superintendent of Buildings and Bridges," was directed by the general manager of the defendant to have certain work done, and made a contract with McLeod to do it. The written memorandum of this contract was in evidence, and is as follows:

"W. B. McLeod agrees to do grading between tracks south of passenger depot, in Parsons, under the direction of the engineer of the M. K. & T. Railway Company, for 21 cents per cubic yard, (one cent per yard overhaul;) the work to be done to the acceptance of engineer, within 30 days.

"W. B. McLeod.
"E. B. Stevens."

Now while the defendant does not appear upon the face of this agreement as party thereto, yet the testimony of Stevens above given shows that he was simply the agent of the company, and as such agent made the contract with McLeod. Upon such testimony McLeod would have had no difficulty in recovering from the company for the work he did under said contract. It was plainly its contract.

III. The work contracted for was "grading between tracks

south of passenger depot, in Parsons." The extent of the work does not appear, but it was stated by the witness Stevens that side-tracks had been laid on this grade, and that a portion of the main track ran over it. His testimony as to the instructions given him, and in pursuance of which he made the contract with McLeod, was as follows:

"He (the general manager) and I were walking over the ground between the tracks just south of the passenger depot. He said to me, 'I want you to go and have this ground graded to that cut on the hill, about 100 yards from where the freight depot now stands, and have the cut widened, and haul the dirt up and fill it between the tracks; fill up the hollow places, and round off the ground, so as to give drainage.'" [And upon cross-examination Stevens further testified as follows:] "The object of the work was, to fill up hollow places between the tracks, to finish and round off the grade in the yard, so as to give better drainage, and to give room for additional side tracks when wanted."

This was all the testimony tending to show the character of the work. The language of the statute is, "Whenever any railroad company shall contract with any person for the construction of its road, or any part thereof, such railroad company shall take," etc. (Laws of 1872, p. 286.) And the contention of counsel is, that the act only applies to the original construction of the road, and not to work done in repairs and improvements — "not in repairing one already built, nor throwing up an embankment to protect one already built, nor in filling between tracks so as to give drainage to the road-bed, and protect it from being washed by heavy rains." Now, whatever may be the exact limitations of this act, we think there was sufficient testimony to sustain a finding that the work done was in the construction of a part of defendant's road. The act does not cease to be applicable when a single track has been completed, but applies whenever the company enlarges its road by the extension of its single track, or the addition of side-tracks. Here was something more than repairs, something more than embankment to protect track, or filling for purposes of drainage. Evidently, additions to the road were contemplated; side-tracks were to

be graded for; a part of the road was to be built; and the act was applicable.

IV. The debts were all originally to laborers, and for work done on this grade. But the present plaintiff was not the original creditor. The note he purchased, and the orders were drawn on him by the contractor. In this way the original creditors, the laborers, have received their pay, and transferred their claims to the plaintiff. But the debts have not been paid by the debtor, the contractor. The language of the act is, "and if such railroad company shall fail to take such bond, such railroad company shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor." This responsibility of the company stands in lieu of the bond, and is security for the debt; and when the debt is assigned, it carries the security. We do not understand the expression, "liable to the persons herein mentioned," as making the security purely personal, and non-assignable, but simply as imposing a direct and original liability, and independent of the amount remaining due by the company to the contractor.

Upon the whole case we think the judgment of the district court must be sustained.

All the Justices concurring.