A. A. FLEMING V. A. W. GREENE *et al.*

FRAUD — *Notes — Illegal Consideration.* Where promissory notes and a
mortgage are given for the excess over a certain sum upon an invoice
of goods, which is found to have been made by the payee of the notes
and another with the intention of cheating and defrauding another,
and the signatures to such notes and mortgage were actually obtained
by means of such false and fraudulent inventory, *held*, that the trans-
action is unlawful and the consideration of such notes and mortgage
is illegal, and that the same are therefore void.

*Error from Jackson District Court.*

THE opinion states the material facts. Judgment for de-
fendants, *Greene* and another, at the November term, 1889.
The plaintiff, *Fleming*, brings the case to this court.

*Hayden & Hayden*, for plaintiff in error.
*Keller & Noble*, for defendants in error.

Opinion by GREEN, C.: This was an action brought in the
district court of Jackson county by the plaintiff in error against
the defendants in error, upon two promissory notes, each for
the sum of $1,088.20, and to foreclose the mortgage given
to secure the payment of the same. The indebtedness was
created in the exchange of certain real estate owned by one
of the defendants in error in Kansas City, Mo., and Butler
and Chautauqua counties, Kansas, for certain real estate and
a stock of goods situated in Netawaka, in Jackson county,
Kansas, and owned by O. J. Fleming, a son of the plaintiff
in error. It was agreed that an inventory should be taken
of the stock of merchandise upon the basis of the actual cost
price, and if the inventory showed a less amount of goods than
$5,250, Fleming was to furnish other merchandise sufficient to
make good the difference; and should the inventory show an
excess over such amount, A. W. Greene should pay the differ-
ence to Fleming. An inventory was taken, which amounted
to $7,426.40, and the notes sued on were given for the differ-

ence between this sum and $5,250. These notes were sold to A. A. Fleming, the plaintiff, before maturity, and were not paid when due. The defendants answered, and alleged, among other things, that O. J. Fleming and A. A. Fleming hired one Grant Guthrie to make false entries upon the inventory, for the purpose of cheating and defrauding the defendants, and that false and fraudulent entries and invoices were made for the purpose of deceiving the defendants; that O. J. Fleming represented to A. W. Greene that the invoices were true and correct, and that he relied upon them.

The case was referred to Hon. Case Broderick, as a referee, to report upon the issues of fact as well as conclusions of law. The referee found that within four or five days after the stock of goods had been turned over to A. W. Greene, he discovered errors in the inventory; that there were overcharges, charges for goods not in stock, and for worthless goods, but that it did not appear in all instances what amount was overcharged, so that it was impossible to correct all of the errors; that there had been no offer made by the defendant at any time to rescind the contract; that O. J. Fleming and Grant Guthrie, by an understanding between them, and for the purpose of cheating and defrauding the defendants, inventoried goods not in stock, goods wholly worthless, charged for some goods twice and overcharged on others; that A. A. Fleming had sufficient information to charge him with knowledge of the fraud, so that he was not an innocent purchaser of the notes sued on in this action.

As conclusions of law, the referee found that there had been a failure of consideration for the notes signed by the defendants to the extent of $658.19; that A. A. Fleming was not an innocent purchaser, but held the notes subject to the equities of the defendant; that A. W. Greene was chargeable with $130, the value of certain improvements which were to have been placed by him upon the Kansas City property; that there was due the plaintiff from the defendants the sum of $1,648.21 and interest, for which judgment should be rendered.

The district court confirmed the report of the referee as to the findings of fact, and overruled the same as to the conclusions of law, for the reason that upon the facts found the promissory notes mentioned were null and void, by reason of the provisions of ¶ 2228 of the General Statutes of 1889, and rendered judgment against the plaintiff for costs. The plaintiff made a motion for a new trial, which was overruled, and brings the case here, assigning as error the overruling of the referee's conclusions of law.

The question presented by the record in this case is, whether or not the frauds found by the referee rendered the notes sued upon in this action void. Section 94 of the crimes act, upon which the district court based its conclusion of law, reads as follows:

"Every person, who, with the intent to cheat or defraud another, shall designedly, by means of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, right in action, or any other valuable thing or effects whatsoever, upon conviction thereof shall be punished in the same manner and to the same extent as for feloniously stealing the money, property, or other thing so obtained."

It is contended by the plaintiff in error that the findings of the referee do not bring this case within the provisions of this section of the crimes act; that the signatures to the notes sued on were not obtained by means of the inventory which the referee found contained false and fraudulent entries.

Let us see whether this position be correct. The consideration moving to the execution of the notes was that the goods should inventory more than $5,250; otherwise no notes were to be given. How was the result brought about? In order to obtain the notes the invoice must be swelled to an amount beyond the sum named. This was done by fraud. It must have been done designedly, because the referee finds that O. J. Fleming and Grant Guthrie, by an understanding between them, and for the purpose of cheating and defraud-

ing the defendants, inventoried goods not in stock, goods
wholly worthless, charged for some goods twice and over-
charged on others.   By this finding we have the false writ-
ing, that its purpose and object was fraudulent, and that the
writing was known to be false.   The fourth finding estab-
lished the fact that the notes and mortgage sued on were
executed and delivered by the defendants for the difference
between the apparent value of the goods as shown by the in-
ventory and the sum of $5,250.   The defendants executed the
notes because the inventory exceeded the last-named amount.
It would not be fair to say that Greene had an opportunity to
and did examine the goods, and therefore relied upon his own
judgment rather than the inventory.   An inspection of the
goods would not establish the correctness of the inventory,
which was not delivered until the notes and mortgage had
been signed.   Both parties must have been governed by this
inventory; they acted upon it.   The notes were made for the
surplus as shown by this inventory.   It was the means by
which the notes and mortgage were procured.

If we are correct in this conclusion, it necessarily follows
that the transaction was illegal.   There was no other consid-
eration for the notes sued on.   If the goods did not invoice
more than $5,250 the defendants had nothing to pay.   It is
obvious, from the findings of the referee, that the contract was
an entirety, and is not susceptible of divisibility.   The fraud-
ulent transaction, as found by the referee, was a plain viola-
tion of the statutory law, and cannot form the basis of a valid
contract. (*Gerlach v. Skinner,* 34 Kas. 86; *Hinnen v. New-
man,* 35 id. 709.)   The rule has been tersely stated in the
case of *Widoe v. Webb,* 20 Ohio, 435:

"Whenever the unlawful part of the contract can be sepa-
rated from the rest, it will be rejected, and the remainder
established.   But this cannot be done when one of two or
more considerations is unlawful, whether the promise be to do
one lawful act, or two or more acts, part of which are unlaw-
ful; because the whole consideration is the basis of the whole
promise.   The parts are inseparable. (Metcalf, Contr. 246;
Addison, Contr. 905; Chitty, Contr. 730; 1 Parsons, Contr.

456; 1 Parsons, N. & B. 217; Story, Prom. Notes, § 190; Byles, Bills, 111; Chitty, Bills, 94.) Whilst a partial want or failure of consideration avoids a bill or note only *pro tanto*, illegality in respect to a part of the consideration avoids it *in toto*. The reason of this distinction is said to be founded, partly at least, on grounds of public policy, and partly on the technical notion that the security is entire and cannot be apportioned; and it has been said with much force that where parties have woven a web of fraud or wrong, it is no part of the duty of courts of justice to unravel the threads and separate the sound from the unsound; and in general it makes no difference as to the effect, whether the illegality be at common law or by statute."

This court has said upon the same subject, in the case of *Gerlach v. Skinner*, 34 Kas. 89:

"Where a part of a consideration of an entire contract is illegal, the contract is tainted and the courts will not compel its performance. 'You shall not stipulate for iniquity; all writers upon our law agree in this: no polluted hand shall touch the pure fountains of justice.' (*Collins v. Blanton*, 2 Wils. 341.) The policy of the law is to leave the parties in all such cases without remedy against each other; the courts will not lend their aid to a party who founds his cause of action upon an immoral or illegal act. If, from a plaintiff's own statement, or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of the state, there the court says he has no right to be assisted. (Wharton, Contr., § 340; *Korman v. Heron*, 32 Kas. 49, 343.)"

"No agreement between parties to do a thing prohibited by law, or subversive of any public interest which the law cherishes, will be judicially enforced." (Bishop, Contr., § 471, and authorities there cited; 2 Randolph, Com. Paper, § 517; Brandt, Surety. and Guar., § 11; *Handy v. Globe Pub. Co.*, 42 N. W. Rep. 872; *Scott v. Gilmore*, 3 Taunt. 226.)

The plaintiff in error insists that the defendants cannot avail themselves of the illegality of the transaction until they restore to the other party all that has been received from him. The answer made to this position is, that the notes were given for the excess of the invoice, which was found to be fraudulent; that there was in fact no excess, and therefore there was

nothing to tender back; that the consideration for the notes was illegal and therefore void.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.