No. 27,276.

THE J. B. COLT COMPANY, *Appellant,* v. MINNIE F. KOCHER et al.,
*Appellees.*

SYLLABUS BY THE COURT.

CONTRACTS—*Varying Terms of Written Agreement by Parol—Pleading—Evidence.* Rule followed that in the absence of pleading and proof of some species of fraud or mutual mistake in the procuring of a party's signature to a plain and unambiguous written contract, it must be enforced according to its terms, and neither pleading nor proof of a parol understanding at variance with such terms can be considered.

Appeal from Pratt district court; GEORGE L. HAY, judge. Opinion filed April 9, 1927. Reversed.

*E. R. Barnes,* of Pratt, and *Wilfred C. Roszel,* of New York, N. Y., for the appellant.

*William Barrett* and *George Barrett,* both of Pratt, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover the purchase price of an acetylene lighting plant. The defense was that agents of the plaintiff had procured the contract through false and fraudulent representations. The defendants prevailed and plaintiff appeals.

The contract was dated August 21, 1922. It was in the form of an order addressed to the plaintiff requesting shipment of one carbide generator with various appliances aggregating a total price of $369. Pertinent parts thereof read:

"In consideration of the acceptance by the company of this order the undersigned (purchaser) agrees to pay to the company three hundred sixty-nine ..../100....dollars within .... one year .... from date of acceptance of this order. The purchaser agrees to make, execute and deliver to the company forthwith upon notice of due acceptance, his or their promissory note in form prescribed by the company, for the amount aforesaid and payable from date of acceptance of this order without interest.

"Warranty: It is agreed that in accepting this order the company warrants the apparatus furnished to be automatic in action, and of good material and workmanship, and that it is on the permitted list of the National Board of Underwriters.

"In the event of the failure or refusal of the purchaser to execute and deliver to the company the promissory note above referred to at the time above

Appeal and Error, 4 C. J. p. 679 n. 39. Contracts, 13 C. J. pp. 370 n. 25, 372 n. 38. Evidence, 22 C. J. pp. 1075 n. 50, 1098 n. 96, 1102 n. 97, 1253 n. 36; 17 L. R. A. 272; 10 R. C. L. 1033. Trial, 38 Cyc. p. 1547 n. 20.

stated, the full amount of the above mentioned contract price shall at once becomes due and payable.

"If the purchaser shall instruct the company not to ship the above-described material the company may at its option either hold the material for the purchaser or deliver the material to a common carrier consigned to the purchaser, and either action on the part of the company shall be considered as full performance of the contract by the company.

"This order shall become a contract between the purchaser and the company upon acceptance thereof in the space below by an officer or credit manager of said company at its office in New York, N. Y.; it being understood that this instrument, upon such acceptance, covers all of the agreements between the purchaser and the company, and that no agent or representative of the company has made any statements, representations or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth. It is further understood that upon the acceptance of this order, the contract so made cannot be canceled, altered or modified by the purchaser or by any agent of the company, or in any manner except by agreement in writing between the purchaser and the company acting by one of its officers.

"Payments shall be made only by check or draft, or promissory note, drawn to the order of the company.

"The undersigned (purchaser) have each jointly and severally executed this order as principals and not as guarantors or sureties."

The plant was delivered and installed and operated by defendants for a short time during the fall of 1922. The defendants executed no promissory note as provided by the contract and made no payments thereon. Three years thereafter they again tried out the apparatus, not, however, to their satisfaction. Their answer contained various allegations of fraudulent representations made by plaintiff's agents at the time of the sale, summarized substantially as follows: That the apparatus and material of the plant consisted of a new model generating machine and heating equipment particularly designed for the heating of dwellings; that the generating apparatus was more efficient and would do better work and produce carbide gas at a much less expense than an older machine (manufactured by plaintiff with which defendants were familiar); that it would adequately heat defendants' dwelling in a better and more satisfactory manner than it could be heated with coal; that the expenses of maintaining and operating such machine would be much less than the heating of the dwelling with coal; that the machine would run on a 200-pound drum of carbide for a period of some four to five months at a cost to defendants of $12.55. The answer further alleged that such statements were false and fraudulent; that plaintiff knew them to be false and fraudulent, and that they were made

for the purpose of deceiving these defendants; that the defendants, relying upon said statements and believing them to be true, agreed to buy such apparatus and equipment and signed the contract, a copy of which was attached to plaintiff's petition.

The plaintiff moved for judgment on the pleadings on the ground that the answer failed to state a legal defense. The motion was overruled and trial had. Plaintiff moved for a directed verdict on the ground that defendants' evidence in support of their answer failed to prove material facts sufficient to constitute a defense to the written contract entered into which was admitted by the defendants.

Plaintiff's motion was overruled, the case submitted to a jury— verdict and judgment for defendants. It may be noted that the contract recited that the instrument covered all the agreements between the purchaser and the company, and that no agent or representative of the company had made any statements, representations or agreements, verbal or written, modifying or adding to the terms and conditions set forth.

The agents were acting upon limited powers. They were no more than mere solicitors. The defendants admitted they did not read the contract; that they made no attempt to do so. There was neither allegation nor proof that the signature of the defendants to the contract was procured by fraud. It was the duty of defendants to learn and know the contents of the written agreement before executing it. Failure to read or to obtain a reading of it was gross negligence on their part. It is presumed that the contract contains the whole and only terms agreed upon between the parties.

"It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible. . . . . The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to

Colt Co. v. Kocher.

obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." (6 R. C. L. 624, 625.)

"Where a person cannot read the language in which a contract is written, it is ordinarily as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able so to do, and his failure to obtain a reading and an explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." (13 C. J. 372.)

*Fort Scott Coal and Min. Co. v. Sweeney,* 15 Kan. 244, was an action to recover on a contract leasing certain tracts of land for the term of two years with the privilege of digging thereon for coal. Defendant's answer alleged that they were to have the right to go upon the premises and to dig thereon, "good, merchantable and marketable coal." Nothing was said in the contract as to "good, merchantable and marketable coal." The court held that the effect of the answer was to vary the terms of the written contract between the parties. It was said that allegations in an answer so far as they attempt to vary or contradict the terms of importance of an admitted written contract between the parties are nullities. (See, also, *Thresher Co. v. Nelson,* 105 Kan. 517, 184 Pac. 982; *Burns v. Spiker,* 109 Kan. 22, 202 Pac. 370; *Hazelton v. Chaffin,* 109 Kan. 175, 197 Pac. 870; *Snell v. Union Sawmill Co.,* 159 La. 604, 105 So. 728; *Milner v. Earl Fruit Co.,* 40 Ida. 339, 232 Pac. 581; *First Nat. Bank v. Ten Mapel,* 198 Ia. 816, 200 N. W. 495.)

The contract was binding upon the parties. It provided that no representations other than those embodied within its terms could be considered. It contained no statement with reference to heating defendants' house. Under the circumstances, the defendants stated no defense. They sought only to set up matters not contained in the contract. The court would have been justified in sustaining the plaintiff's motion for judgment on the pleadings. Not having done so, and defendants having produced no evidence showing fraud in procurement of their signatures to the contract, the court should have sustained plaintiff's demurrer to defendants' evidence and directed a verdict for the plaintiff.

The judgment is reversed and the cause remanded with instructions to enter judgment for plaintiff.