No. 32,368

WILLIS B. WOOD, *Appellant*, v. THE OZARK PIPE LINE COMPANY,
*Appellee.*

(46 P. 2d 614)

Opinion
filed July 6, 1935.

*C. W. Mitchell,* of Cherryvale, for the appellant.
*LeRoy Bradfield,* of Neodesha, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for a declaratory judgment to construe a contract for the sale and purchase of natural gas. Judgment was for defendant. Plaintiff appeals.

The plaintiff is the owner of a number of natural-gas wells in Labette county. Defendant is a distributing company supplying gas to consumers in the city of Parsons and elsewhere. On April 30, 1932, the parties entered into the contract in question. In that contract plaintiff is spoken of as the seller and defendant as buyer. The part of the contract with which we are concerned is as follows:

"Buyer shall no longer be required to take gas when same cannot be delivered in paying quantities and at sufficient pressure to enter buyer's lines against working pressure therein, and in such case buyer may cancel this contract after sixty days; seller may cancel this contract, however, if average working pressure in the meter through which buyer is taking seller's gas in buyer's line shall exceed twenty-four pounds for sixty days; provided, however, that thirty days' written notice of cancellation shall first be given to one party by the other and the condition allowing cancellation not remedied before expiration of said thirty days, but if buyer shall suffer a loss of market, or for other causes be unable to carry out the intents and purposes of this agreement, then seller shall be released from selling gas to buyer hereunder, providing another market has not been found in ninety days from the time gas is shut off."

It will be noted that the above provision states how the contract may be terminated by the buyer when the seller does not comply

with its terms and the seller may terminate it when the buyer does not comply.

This action grows out of an attempt on the part of the seller to terminate the contract because the buyer kept the pressure in the main at a daily average higher than twenty-four pounds for sixty days.

The petition alleged the existence of the contract; that for a period of sixty days the average working pressure in main line of defendant has been maintained at more than twenty-four pounds; that plaintiff had called this condition to the attention of defendant and the probable cause of it; that no response had been made by defendant to this letter; and that on August 30, 1934, plaintiff gave the defendant the written notice of intention to terminate the contract, as provided for in the paragraph of the contract that has been quoted.

The petition then alleged that although thirty days had elapsed since the notice had been given the defendant had refused to release plaintiff from his obligation, but had threatened to hold plaintiff for damages if he failed to deliver gas and that defendant for more than thirty days following the delivery of the notice had failed to remedy the condition that allowed cancellation in that it had—

"(a) Failed to materially increase the industrial market for its gas, but on the contrary has increased the number of its domestic consumers.

"(b) Failed to continue to supply gas to the large commercial pipe line to which it was connected at the time the said contract was executed.

"(c) Failed to provide storage reservoirs or other devices for insuring an even, nonfluctuating pressure in its pipe line at a twenty-four pound daily maximum average.

"(d) Failed to dispose of its gas in said pipe line in a steady and continuous volume.

"(e) Failed to so operate its pumps, pipe line and other equipment as to distribute the pressure in its said pipe line over the various hours of the day so as to maintain an even, nonfluctuating pressure of a twenty-four pound daily maximum average."

The petition then contained the following allegations:

"6. That at the defendant's request, and to avoid delays of pleading, the plaintiff admits that the daily average working pressure in the defendant's meter during the period of thirty days next following August 30, 1934, was less than twenty-four pounds, but alleges that such low pressures were due to an extraordinary demand for gas to operate the water pumps of the city of Parsons during the drouth period then prevailing, same constituting an emergency. A table of said pressures for said thirty-day period will be furnished if the defendant so demands.

"7. That a controversy has arisen between the plaintiff and the defendant as to whether or not the said contract has been broken and the plaintiff released therefrom by and on account of the defendant's failure, during a period of sixty days, to maintain an average working pressure in said meter of not more than twenty-four pounds and its further failure to remedy the condition allowing cancellation within the period specified in said contract."

The prayer of the petition was for a determination of the rights of the parties. To this petition the defendant demurred on the ground that it did not state a cause of action against defendant. This demurrer was sustained. When the prayer of the petition is considered in connection with the allegations the sustaining of the demurrer amounts to a holding by the trial court that the seller did not have any right to terminate the contract. The question upon which the case turns is, Did the action of the defendant in reducing the pressure in its main during the thirty days immediately following the serving of the notice remedy the condition of which plaintiff complained and which he relied on as a sufficient reason for terminating the contract?

The situation is that the wells of plaintiff are shale gas wells. The gas comes from these wells at a low pressure. When the gas from the wells is turned into the main of defendant if the pressure in the main is greater than that from the well the gas from the well will not flow into the main. The more gas the main is furnishing to consumers the lower the pressure. For this reason plaintiff argues that the lowering of the pressure in the main after the notice was served was not due to anything done by defendant, but was due to the fact that the pumping plant of the city of Parsons required an unusual amount of gas, causing more gas to run through the main, resulting in a lower pressure.

It will be noted that plaintiff pleaded in his petition that defendant had failed to do certain definite things which would have prevented a recurrence of the condition. It is his contention that to remedy the condition meant that some one of the actions set out in his petition should have been taken and that when defendant failed to take one of these steps plaintiff had a right to terminate the contract.

On the other hand, defendant contends that under the contract it had thirty days after the service of the notice to remedy conditions allowing cancellation, that is, the excessive pressure, and when the pressure was kept below twenty-four pounds for thirty days the

right of the plaintiff to terminate the contract on account of the excessive pressure ceased.

This contract is in writing and is not ambiguous. The contention of plaintiff if sustained would amount to a holding that the owner of the gas wells could direct the defendant as to how it should conduct its business. The rule is laid down in 13 C. J. 524, as follows:

"The intention of the parties is to be deduced from the language employed by them, and the terms of the contract, where unambiguous, are conclusive, in the absence of averment and proof of mistake, the question being, not what intention existed in the minds of the parties, but what intention is expressed by the language used. When a written contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed. Hence words cannot be read into a contract which import an intent wholly unexpressed when the contract was executed. Where the contract evidences care in its preparation, it will be presumed that its words were employed deliberately and with intention.

"It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly, as the court cannot supply material stipulations or read into the contract words which it does not contain.

"A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole. . . ."

The contract in this case is a great deal like the one considered in *Utilities Co. v. Bowersock*, 109 Kan. 718, 202 Pac. 92. This was an action over the right of a company owning a power dam to terminate a contract to furnish electric energy to a utilities company. The syllabus of the opinion states the facts and what the court held. It is as follows:

"1. . . . Under a written contract in force since 1909, and which was to extend for twenty-one years unless terminated as provided in the contract, defendants have furnished electric power to plaintiff to be used in the operation of its railway and electric-light plants. A controversy arose between them over a paragraph in the contract which provided in substance:

" 'If after the installations as herein provided for are made by the defendants it should be ascertained after careful trial and demonstration that the water power is unsatisfactory or insufficient to operate the mills of defendants and the plants of plaintiff, then this contract shall be abrogated and declared null and void, and in such event a former contract between the same parties, a copy of which is attached hereto, shall be in full force and effect.'

"In the same clause it was provided that in the event it should be found that the water power was unsatisfactory for the successful operation of the

plants of both parties the plaintiff should have the right to purchase the auxiliary steam or gas plant at its then value.

"Acting under this clause, the defendants served notice in 1919 of their intention to abrogate the contract, when this suit was brought to enjoin such action. The rules that a contract must be construed in its entirety; that where it is not ambiguous, its terms control, and extraneous evidence cannot be resorted to to explain the contract; that where the contract is clear and unambiguous, courts will not resort to the rule of practical interpretation by the conduct of the parties, are applied, and held, (a) There is nothing ambiguous in the contract; (b) The provision for ascertaining after careful trial and demonstration whether the water power was unsatisfactory or insufficient did not refer to a single specific test, or mean that in case such test demonstrated that the power was satisfactory then from that time until the end of the twenty-one-year period defendants were bound to furnish all the energy required by plaintiff; (c) the provision referred to a continuous possibility of the water power proving unsatisfactory or insufficient from any cause at any time, and the provision permitting either party to abrogate the contract continued in force for the purpose of meeting such conditions." (Syl. ¶ 1.)

The only condition with which plaintiff is concerned is the pressure in the mains of defendant. Plaintiff argues that the construction that is contended for by defendant will permit it to increase the pressure after the expiration of thirty days. There is no reason why this court should assume that defendant will do this. Plaintiff might have bound defendant to take a stipulated amount of gas from him. Had he done so we would have had a different question here. As it is plaintiff executed the contract sued on. It provides in unambiguous terms as to the manner in which it can be terminated by either party. To sustain the contention of plaintiff would be to read into the contract a provision that by its terms was not intended to be there.

The judgment of the trial court is affirmed.