No. 37,900

D. R. MALTBY, ARTHUR RAYMOND MALTBY and HAROLD L. MALTBY, *Appellants*, v. MARY KATHLEEN SUMNER and MILTON T. SUMNER, *Appellees*.

(219 P. 2d 395)

Opinion filed June 10, 1950.

*W. S. Norris,* of Salina, argued the cause, and *F. C. Norton* and *H. L. Smither,* both of Salina, were with him on the briefs for the appellants.

*Evart Mills,* of McPherson, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This appeal arises out of an action to set aside two deeds and was taken by plaintiffs from an order rendering judgment against them pursuant to a motion for judgment on the pleadings.

The appeal requires examination of the verified pleadings consisting of an amended petition, answer and amended reply. Before narrating the essence of material portions of such pleadings a brief general statement of admitted facts may be helpful.

We shall continue to refer to the parties as plaintiffs and defendants, except as we refer to certain of them by name. The plaintiffs are D. R. Maltby, a widower, and his two sons, Arthur Raymond

Maltby and L. H. Maltby, also referred to as Harold L. Maltby. The defendants are Mary Kathleen Sumner, formerly Mary Kathleen Foster, and her husband, Milton T. Sumner. Mary Kathleen is a daughter of a prior deceased adopted daughter of the plaintiff, D. R. Maltby, and his deceased wife. Mary Kathleen's mother died in 1932 and Mary Kathleen was reared in the D. R. Maltby home.

The foundation of plaintiffs' cause of action to set aside two deeds executed and delivered to Mary Kathleen is that such deeds were executed in consideration of and pursuant to a certain previous oral contract made by D. R. Maltby for himself and on behalf of the two plaintiff sons with Mary Kathleen Sumner and her husband. The oral contract alleged by plaintiffs was that the contracting parties had agreed defendants would keep house and care for D. R. Maltby during the remainder of his life, that defendants breached the agreement and that both deeds were therefore invalid.

The amended petition, in substance, further alleged: D. R. Maltby's wife died in 1944; defendants lived with and kept house for D. R. Maltby (to whom we shall hereafter refer to as "D. R.") in an affectionate and careful manner until on or about June 11, 1947, when D. R. for himself and on behalf of his two sons entered into an oral contract with defendants whereby it was agreed if defendants would continue to so care for D. R. during the remainder of his life he would convey, and cause to be conveyed, to Mary Kathleen the McPherson residence property in which D. R. and defendants were then living, subject to the reservation of a life estate in D. R., and that he would also convey a one-third interest in a business building in McPherson, likewise subject to a life estate in D. R.; that D. R. would convey an equal undivided one-third interest in said business building to each of his two plaintiff sons; that D. R. would further contribute a certain amount of money monthly toward his care (he was then over eighty years of age); pursuant to such oral agreement D. R., on June 11, 1947, executed such a deed to the business property to his two sons and Mary Kathleen (this particular deed to the business property recited the consideration was "One Dollar ($1.00) and Love and Affection . . .") ; on June 23, 1947, D. R. together with his two sons and their wives executed a warranty deed whereby they conveyed to Mary Kathleen all of the undivided interests of the plaintiffs in the residence property, also subject to a life estate in D. R. (this deed recited the consideration for the conveyance of the residence property to be $10 and other valuable consideration. Revenue stamps in the sum of $2.20 were

attached to the deed by D. R.); the deeds were recorded on October 20, 1947, and September 2, 1947, respectively.

The amended petition, in substance, further alleged: The only consideration for the two deeds was the promise and agreement of defendants to make a home and care for D. R.; the actions and conduct of defendants prior to the execution of the deeds whereby they indicated affection and respect for D. R. were false and a pretense for the purpose of procuring the deeds; their conduct constituted a fraud on D. R.; defendants originally intended to breach the contract; within two or three weeks after the execution and delivery of the deeds to Mary Kathleen, the defendants breached the contract and ceased to treat D. R. with the affection and respect they formerly had; by reason of such breach the consideration for the deeds failed, the deeds were invalid and should be set aside.

The answer of defendants first contains a general denial of all matters alleged in the amended petition not expressly admitted in the answer. The answer, in substance, further states: An entirely different oral contract was made between defendants and D. R. relative to the latter's care from that alleged by plaintiffs; the oral contract was made in April, 1944, and not in 1947 as claimed by plaintiffs; the oral contract was made shortly after the death of D. R.'s wife in 1944; it was at the time of the funeral of D. R.'s wife that he requested defendants to leave their home and business in Texas and to come and make their home with him in the McPherson residence property; the agreement was if defendants would come and make a home for D. R. he would will the residence property and its furnishings to Mary Kathleen and defendants could have free use of the home and its contents so long as D. R. lived; defendants disposed of their furniture in Texas, left their business, came to live with D. R. on or about April 15, 1944, and continued to live with him until about June 1, 1948; the business property was not involved in the oral contract; it was the residence property only which D. R. agreed to will to Mary Kathleen together with its furniture and contents.

The answer, in substance, further alleged: D. R. changed the oral contract after defendants were living with him; D. R. advised defendants it was necessary for him to change that contract as he had previously devised a one-third interest to Mary Kathleen and the two sons by a former will; by reason of such change defendants were obliged to and did purchase the residence property from D. R.

and the latter adjusted the situation by executing a codicil to his former will on June 8, 1944 (the codicil was attached to the answer); the deeds in question to the residence and business property were subsequently executed on June 11, 1947, and June 23, 1947; the conveyance of the business property was in nowise related to the oral contract; that conveyance constituted a gift of an equal undivided one-third interest to Mary Kathleen and to the two sons; that deed was executed by D. R. as a part of his plan to divide his property among the three grantees during his lifetime instead of leaving it to become a part of his estate and also to prevent an alleged creditor from reaching any part of it; defendants did not breach the oral agreement; in 1948 D. R. was eighty-eight years of age; Mary Kathleen was twenty-eight and her husband thirty-six; by reason of the disparity of ages between D. R. and the defendants and their children and the differences in their attitudes and viewpoints D. R. became dissatisfied with defendants and on May 26, 1948, served notice on them to vacate the premises; he served another such notice on July 3, 1948, at the time he filed suit against defendants in the district court to enjoin and restrain them from moving any personal property from the premises.

The answer further, in substance, states: Defendants were at all times willing to care for D. R. and left the residence only by reason of his insistence; in order to comply with D. R.'s request for possession of the residence defendants were required, being unable to find a rental property, to purchase another home at a premium; on July 8, 1948, D. R., the plaintiff Harold L. Maltby, and defendants met in the office of A. T. MacDonald, plaintiffs' attorney, for the purpose of settling all differences existing between them and to reëstablish amiable relations among them; before such written agreement was executed D. R. stated to defendants he wanted them to be satisfied, that he was satisfied and wanted to be friends again.

The agreement as executed was signed by D. R. and defendants and reads:

"This agreement made and entered into this 8th day of July, 1948, by and between D. R. Maltby, hereinafter known as First Party, and Milton T. Sumner and Kathleen Sumner, hereinafter known as Second Parties, all of McPherson, Kansas, WITNESSETH:

"That, Whereas, the said First Party *is the owner* of a life estate, and the Second Parties *are the owners* of the remainder estate in and to the real property described as: [description of residence property]

"Whereas, the said parties desire to agree as to the possession of the de-

scribed real property and as to certain furniture, household goods and effects located in the described real property;

"Now, Therefore, in consideration of the covenants and mutual promises *herein contained,* said parties do agree as follows:

"1. That the said Second Parties shall and will give up to the First Party the possession of the said described real property by the 1st day of August, 1948; it being understood that during the occupancy of the described property by First Party as life tenant, he shall and will pay all taxes and insurance upon the property, and shall and will maintain the buildings and premises in a good state and condition of repair.

"It is further understood and agreed that upon the demise of said First Party, that Mr. and Mrs. L. H. Maltby shall have a reasonable period of time, not to exceed six months, from the date of the demise of said First Party, in which to give up possession of the described real property.

"2. It is further understood and agreed that the said First Party owns a life estate in the personal property described in the list attached hereto and made a part hereof as Exhibit 'A', with the right of exchanging and replacing the same, and that at the demise of First Party, said furniture and effects shall be owned absolutely by Second Parties; and it is agreed that First Party does hereby sell, transfer and convey, and release, remise and quit-claim to said Second Parties any and all of the other personal property, furniture and household effects now located in and upon the described property.

"The parties hereto agree that this contract shall be considered as a compromise and settlement of all differences heretofore existing between them, and that it is made and entered into with the desire and intention on the part of both parties to re-establish amiable relations between them.

"The parties hereto agree that this instrument shall be binding upon them and their heirs, and in witness thereof, have hereunto set their hands at McPherson, Kansas, on the day and year first above written." (Our italics.)

The answer, in substance, further states: The terms of the agreement were carried out by each party; plaintiffs stated to defendants there were no differences between them other than the dispute over the furniture and the time when defendants should give possession of the residence; defendants relied upon such representations when they executed the compromise agreement; plaintiffs are estopped to maintain the instant action for the reason stated.

In plaintiffs' amended reply they denied generally all material averments contained in the answer except such as were expressly admitted in the reply. The reply specifically denied any will or codicil thereto was executed by D. R. pursuant to any agreement with defendants and alleged that any will or codicil made was subject to revocation by D. R. The reply further *denied:* The deeds were executed by D. R. by reason of any creditor's claim against him and that any of the deeds were made as a gift to defendants or either of

them; that no other differences existed between plaintiffs and defendants than that pertaining to possession of the residence property; that the meeting in the law offices of A. T. MacDonald was had for the purpose of settling all differences between plaintiffs and defendants and alleged the meeting was only for the purpose of settling their differences with respect to the possession of the residence property and the household goods and furnishings.

The reply also *denied*: The deeds were prepared by D. R.'s attorney; that an attorney had authority to settle any other differences between the parties and that any other purpose of the meeting was explained to D. R.; that the deeds were made by D. R. for the purpose of avoiding costs of all administration, federal estate taxes, or state and inheritance taxes on his estate; that D. R. employed attorneys to execute the deeds; that D. R. demanded defendants pay $1,700 to him before delivering the deed to the residence property and that defendants paid D. R. the sum of $1,700 on August 27, 1947; that D. R. joined defendants in the execution of a mortgage on the residence property.

In addition to the foregoing denials plaintiffs' amended reply also alleged: D. R. was deaf, had limited vision and was suffering from arteriosclerosis; he did not read the agreement; he was unable to read except with a strong magnifying glass in addition to his spectacles; he did not hear any of the discussion; he was unable to hear ordinary conversations and heard none of the discussion except that part thereof which pertained to the differences relating to the possession of the residence property and household furnishings; he did not know and was not advised, or was his son, the agreement pertained to any other subject; the agreement was not dictated and prepared by his but by defendants' attorney; defendants knew a dispute existed between them and plaintiffs relative to defendants' breach of the oral contract; that if defendants intended the agreement of July 8, 1948, was to relate to anything other than the possession of the residence property, furniture and household effects, then such intention was fraudulently concealed from D. R. and from Harold L. Maltby and was included in the agreement for the purpose of defrauding plaintiffs.

It has been observed the answer of defendants contains denials of some allegations found in the amended petition and that plaintiffs' amended reply contains denials of certain facts pleaded in defendants' answer. A part of such denials pertains to matters which

in some cases might be highly material. Whether they are material here requires an analysis of the fundamental theories of plaintiffs' cause of action and of defendants' defense thereto.

It has been observed the agreement of July 8, 1948, between D. R. and defendants purports to be a ". . . compromise and settlement of all differences heretofore existing between them." According to the pleadings what were the fundamental differences existing between D. R. and defendants prior to the execution of the compromise settlement agreement? They were the date of the oral contract, its terms and who breached it. Plaintiffs allege the oral contract was made in 1947, both deeds were executed to the defendant, Mary Kathleen, in consideration of a single oral contract between D. R. for himself and on behalf of his sons whereby defendants agreed to care for D. R. during the remainder of his natural life; that defendants breached that contract and hence the contract failed and both deeds were invalid.

On the other hand defendants claim: The oral contract was not made in 1947 but in 1944, immediately after the death of D. R.'s wife, and that they promptly left Texas and began their services for D. R. in April, 1944; D. R. promised them the full use of the residence property with him during his lifetime and the remainder estate therein and its furnishings after his death; D. R. did not promise to convey or devise the business property to them; the 1947 deed conveying an equal undivided one-third interest in the business property was a gift to Mary Kathleen; soon after they entered the home D. R. changed the oral contract with respect to the residence property and they complied with such changes as were previously indicated in their answer; later D. R. and not defendants breached the oral contract.

Other differences, or disputed facts, existing prior to the execution of the agreement on July 8 are incidental to plaintiffs' cause of action and defendants' defense. If the fundamental differences heretofore indicated had been resolved in favor of plaintiffs, prior to the compromise agreement, D. R. would have recovered the interests he had conveyed to Mary Kathleen in both the residence and business property, subject possibly to moneys defendants claim to have paid D. R. for the residence property. On the other hand if these same fundamental differences had been resolved in favor of defendants, prior to the July 8 agreement, they would have been entitled to the use of the residence property and household furnishings during

D. R.'s lifetime and to the remainder interest therein by virtue of the oral contract they pleaded and the defendant, Mary Kathleen, would have been entitled to an equal undivided one-third interest in the business property as a gift.

Prior to the execution of the agreement on July 8 D. R. claimed defendants had breached the oral contract and served notices on May 26 and July 3, 1948, on defendants to vacate the residence property. On the latter date D. R. also filed an action to enjoin them from removing household furnishings from the home. Manifestly, under these circumstances the friendly relations which had previously existed, and which the compromise settlement agreement acknowledges to have existed, were shattered.

Bearing in mind all the differences alleged by plaintiffs to have existed at that time between D. R. and defendants, we now turn our attention to the next occurrence in the chronological order of events. With such litigation pending we find plaintiffs, D. R., his son Harold L. Maltby, and defendants in a lawyer's office on July 8, 1948. It was here the compromise and settlement agreement was prepared and signed.

That this agreement was intended to reëstablish amiable relations between the parties is too clearly stated in the agreement to be open to question. That the language of the agreement indicates the parties intended a compromise and settlement of all theretofore existing differences seems equally clear. The pertinent part of the contract reads:

"The parties hereto agree that this contract shall be considered as a compromise and settlement of all differences heretofore existing between them, and that it is made and entered into with the desire and intention on the part of both parties to re-establish amiable relations between them."

We shall first approach the problem on plaintiffs' own pleadings and theory. In doing so we accept plaintiffs' allegation as true that there existed prior to and at the time of the settlement agreement a dispute relative to who breached the particular oral contract pleaded by plaintiffs. How the parties could hope to reëstablish amiable relations between them by means of the agreement of July 8 and at the same time intend thereby to leave unsettled the dispute as to Mary Kathleen's interest in the most valuable property, the business property, when title to her interest therein also depended upon whether the oral agreement embraced that property and upon who breached the contract, is not understandable. Plaintiffs make

no attempt to explain how amiable relations could be thus reëstablished. Manifestly to leave that dispute open for other litigation could result only in further estrangement between the parties.

Plaintiffs also allege and claim the compromise agreement discloses its purpose was to agree only on a settlement of their differences with respect to the right of possession of the residence property and certain household goods and furnishings and nothing more. True the question of the right to possession of the residence property was the immediate cause of dissension but clearly, in view of all the differences alleged by plaintiffs to be then existing, the settlement of that single dispute could not, as already shown, restore amiable relations between the parties. Although one paragraph of the settlement agreement states the parties desired to agree as to the possession of the residence property, furniture and household goods, that is not the only provision of the compromise agreement. The next paragraph reads:

"Now, Therefore, in consideration of the covenants and mutual promises *herein contained,* said parties do agree as follows. . . ." (Our italics.)

One of the mutual promises which follows in the agreement is the one heretofore treated with reference to the compromise and settlement ". . . *of all differences heretofore* existing between them. . . ." (Our italics.)

The interpretation of a written instrument is a judicial function. (*Morgan v. Wheeler,* 150 Kan. 667, 672, 95 P. 2d 320.) The real intent and purpose of a written instrument is not to be determined by considering one isolated sentence or provision thereof but by considering and construing the instrument in its entirety. (*Wood v. Ozark P. L. Co.,* 142 Kan. 333, 336, 46 P. 2d 614; *In re Estate of Koellen,* 162 Kan. 395, 176 P. 2d 544.) Facts and circumstances surrounding its execution become competent only in the event the instrument is ambiguous on its face and requires aid to clarify it. (*Shannep v. Strong,* 160 Kan. 206, 211, 160 P. 2d 683; *In re Estate of Koellen,* supra.) So if this settlement agreement can be said to be indefinite as to whether it was intended to settle all differences theretofore existing or only the dispute with respect to possession of the residence property, the facts pleaded by plaintiffs clearly disclose other related differences which existed between the parties thereto had to be laid at rest if amiable relations were to be reestablished, as was intended. Such other differences according to plaintiffs' allegations, arose out of the alleged breach by defendants

of the oral contract relied upon by plaintiffs. In 15 C. J. S., Compromise and Settlement, § 27, the rule is stated thus:

"A settlement stated to be in full satisfaction of all claims and demands between the parties is conclusive *of all related prior disputes or controversies known to exist,* whether then due or not; and claims are included, although not specially mentioned, where it appears that the parties intended to embrace all matters of differences between them." (P. 746.) (Our italics.)

The result is plaintiffs' interpretation of the contract as a whole is too narrow.

There are other considerations which render plaintiffs' contentions untenable. Here again we must consider only facts alleged and relied upon by plaintiffs. They allege both deeds were the consideration for a single oral contract with defendants to care for D. R. and that defendants' breach of the contract rendered both deeds invalid. The compromise and settlement agreement is not in harmony with plaintiffs' allegations and theory defendants breached the oral contract and therefore lost title to the properties. On the contrary that agreement starts with language which, in effect, conceded the existing validity of the previous oral contract, alleged by plaintiffs, whereby defendants were to receive, among other things, the remainder estate in the residence property. The agreement of July 8 expressly recognizes D. R. as the present owner of only a life estate and defendants as the present owners of the remainder estate in such property. After first recognizing such present existing ownership the agreement thereafter proceeds to state the terms of the compromise settlement with respect to possession. Defendants relinquished possession of the residence property only for a period not to exceed six months after D. R.'s death. The agreement likewise recognizes the same present ownership of the parties in certain household belongings. Clearly the single oral contract, under plaintiffs' own theory of the case, could not have been valid on July 8, 1948, as to the residence property and furnishings and invalid with respect to the business property. It follows that although the agreement of July 8 makes no specific reference to the business property the deed with respect to it cannot be set aside on plaintiffs' theory. This conclusion renders it unnecessary to rely on defendants' allegation that the deed to the business property constituted a gift by D. R. to Mary Kathleen and D. R.'s two sons. That deed stands undisturbed.

We now reach the allegations of plaintiffs' amended reply whereby

they seek to overthrow the effect of the *italicized* portion of the following sentence in the July 8 agreement:

"*The parties hereto agree that this contract shall be considered as a compromise and settlement of all differences heretofore existing between them,* and that it is made and entered into with the desire and intention on the part of both parties to reëstablish amiable relations between them."

We previously indicated the impossibility of isolating various paragraphs of a contract where its interpretation is involved. The same principle, of course, applies with even greater force to parts of the same sentence where one part of it, as here, states the reason for the preceding part of the sentence.

It is not contended D. R. failed to understand the unitalicized part of that sentence. In fact, plaintiffs adopt the unitalicized part of the sentence but argue it was intended to apply only to the possession feature of the residence property. The former part of the sentence is not so limited in its scope. In order to escape the effect of the italicized portion of the same sentence plaintiffs, in substance, alleged: D. R. did not read and was unable to read the contract except with a strong magnifying glass; he was unable to hear all of the discussion; he was able to hear only the discussion which pertained to the residence property; he did not intend to settle all existing differences between the parties and the attorney had no authority to insert the italicized provision in the contract. (See detailed allegations in summary of amended reply.)

If D. R. was unable to hear the entire discussion there is no reason alleged for his failure to have the agreement explained to him or for his failure to get his magnifying glass in order to read the contract before signing it. There is no allegation he was coerced or rushed into signing it or prevented from having his magnifying glass brought to him or from taking the agreement to his home, examining it there and having it explained in detail by his son, Harold L. Maltby, who was present at the conference, or by any other person of his own choosing. There is no allegation he or his son were informed the italicized portion would not be put into the agreement or that it was not contained therein. There is no allegation D. R. or his son asked anyone to explain the agreement and that such request was refused. Nor is there an allegation his son, Harold, could not read or was prevented from reading this short, simple agreement and explaining it to him. A total failure to attempt to understand the terms of such a short, simple agreement before signing it cannot operate to avoid its effect on the ground of ignorance of its contents.

(*Tractor Equipment Co. v. Ayers,* 115 Kan. 769, 225 Pac. 115; *Colt Co. v. Kocher,* 123 Kan. 286, 255 Pac. 48; *First Federal Savings & Loan Ass'n v. Thurston,* 148 Kan. 88, 94, 96, 80 P. 2d 7.) The general rule is that a contracting party is bound by an agreement to which he assents, where the assent is uninfluenced by fraud, violence, undue influence, or the like, and he will not be permitted to say he did not intend to agree to its terms. (17 C. J. S., Contracts, § 136.)

A contracting party is under a duty to learn the contents of a written contract before signing it and if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligations thereunder. (17 C. J. S., Contracts, § 137.)

In 12 Am. Jur., Contracts, § 137, the rule is stated thus:

"It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts."

and that:

"If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents."

What plaintiffs in reality are attempting to accomplish by their allegations is to vary the written provision of the compromise agreement which states it was a "settlement of *all differences heretofore existing* between them. . . ." (our italics) by substituting therefor the words, "a settlement only of differences pertaining to the residence property and furnishings." Similar allegations in a pleading have been held to be nullities. (*Colt Co. v. Kocher,* supra, p. 289, and cases therein cited. See, also, *Golden v. Golden,* 155 Okla. 10, 15, 8 P. 2d 42.)

The purpose of the rule requiring a contracting party to learn the contents of an instrument before signing it is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence were admissible to vary the terms of such instruments. (12 Am. Jur., Contracts, § 137.)

Although we do not predicate our decision on the following circumstances it is somewhat interesting to find that in the amended reply plaintiffs admit D. R. was able to hear the discussion that the agreement was for the purpose of settling the dispute relative to the possession of the residence property and its furnishings.

It is finally argued the order sustaining the motion for judgment on the pleadings bars the two sons of D. R., who were not actually parties to the settlement agreement, from prosecuting an action to set aside the two deeds. As we view the matter it was not necessary they should have been parties to the compromise and settlement agreement in order to make it valid and binding as to D. R. We start with the conceded fact the two properties involved were not owned by the two sons but solely by D. R. prior to the execution and delivery of the deeds. It is not contended D. R. could not dispose of those properties in his lifetime as he desired without consulting his sons or Mary Kathleen. Although aged there is not the remotest allegation his mental capacities were in anywise impaired. In fact he filed the injunction action against defendants five days prior to the compromise agreement. Having full right and authority to dispose of the properties originally as he desired, he likewise retained authority to effectuate a compromise settlement with defendants, as he desired, relative to any interest Mary Kathleen had acquired by virtue of the oral contract and deeds. The original oral contract pleaded by plaintiffs was made by D. R. alone with Mary Kathleen and her husband and was made in order to provide benefits D. R. desired, namely, his care during the remainder of his life. If he believed he was not receiving the care to which he was entitled by virtue of such contract he had a perfect right to make a compromise settlement respecting the same without interference by his sons. If he alone had the right and authority to make the oral contract for himself and his sons he had the same right to compromise the matter for himself and his sons. Then, too, his son Harold was present at the compromise conference. It is not alleged he or his brother, the other plaintiff, opposed the settlement then or thereafter. Furthermore under the compromise settlement Harold obtained possession of the residence property and plaintiffs do not challenge such possessory right.

Moreover defendants, by virtue of the compromise settlement, did not acquire rights in the properties which belonged to the two sons of D. R. but, on the contrary, defendants surrendered their

alleged right to possession of the residence property and certain furnishings during the life of D. R. and not to exceed six months thereafter.

Cases relied on by plaintiffs have been examined and found not to require a judgment contrary to the views herein expressed.

Careful consideration of the fundamental issues presented by the pleadings convinces us the motion for judgment on the pleadings was properly sustained.

The judgment is affirmed.