No. 42,024

ALICE C. EDWARDS, ARTHUR LYKE and MABEL E. KELLEY, *Appellants,* v. PHILLIPS PETROLEUM COMPANY, a Corporation, and SYNDICATE OIL CORPORATION, a Corporation, *Appellees.*

(360 P. 2d 23)

Opinion filed March 4, 1961.

*Charles H. Apt,* of Iola, argued the cause, and *Howard M. Immel* and *Frederick G. Apt, Jr.,* both of Iola, were with him on the brief for the appellants.

*Harold G. Forbes,* of Eureka, argued the cause, and *Thos. C. Forbes* and *George Forbes,* both of Eureka, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for damages (both actual and punitive) brought against two oil companies for alleged fraudulent representations which induced the plaintiffs to enter into a unitization agreement. A demurrer to the petition was sustained by the trial court on the ground it failed to state a cause of action, whereupon appeal was duly perfected to this court.

The controlling question is whether the petition states a cause of action for fraud.

The petition alleges in substance that the plaintiffs (appellants) own an interest in forty acres of land in Greenwood County on which there is a valid oil and gas lease owned by the defendants, dated February 5, 1925, under the terms of which the plaintiffs are the owners of a portion of the royalty. It alleges that on May 3, 1955, the plaintiffs entered into a unitization agreement (attached to and made a part of the petition) with the defendants which unitized

their forty acres with other land; that the plaintiffs entered into this agreement because of representations made to them by the agent of the defendants to the effect that no additional wells would be drilled upon plaintiffs' land; that said representations were false and known to be false at the time they were made; that said representations were fraudulently made for the purpose of inducing the plaintiffs to enter into the unitization agreement; that subsequently the defendants assigned to one R. E. Evans the lease on the plaintiffs' forty acres under a written agreement (attached to and made a part of the plaintiffs' petition) which required the assignee to comply with the obligations imposed upon the lessee (and/or assignee) by the terms of the lease and to drill any and all wells necessary to protect the assigned premises from drainage by wells on adjacent lands; that in August, 1957, R. E. Evans commenced the drilling of a well upon the plaintiffs' forty acres which was completed as a producing oil well, and said assignment was recorded on October 11, 1957.

The petition concludes that "by reason of the premises" the plaintiffs have been damaged in the specific amounts set forth, and "in doing all things herein alleged, the defendant corporations acted maliciously and with wanton disregard of the rights and feelings" of the plaintiffs and by reason thereof punitive damages in the sum of $50,000 are demanded.

Pertinent portions of the unitization agreement, which is a part of the petition, are as follows:

"THIS AGREEMENT, Made and entered into by and between the undersigned 'operators' in the Brothers Unit and the undersigned 'Royalty Owners' in the Brothers Unit, Greenwood County, Kansas:
"WITNESSETH:

"ARTICLE I.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"102. It is deemed proper to enter into this Agreement in order to institute and carry out water-flooding or other secondary recovery operations on said Unit and in order *to more efficiently develop, produce and operate the Brothers Unit* for the purpose of preventing surface and underground waste, obtaining the greatest ultimate recovery and conservation of the unitized substances *and insuring to each of the parties to this Agreement his fair and equitable share thereof.*

.   .   .   .   .   .   .   .   .   .   .   .

"ARTICLE III.

.   .   .   .   .   .   .   .   .   .   .   .

"302. It is understood and agreed that the commencement or drilling of a well to, and the completion or continued operation of a well in any forma-

tion underlying the participating area shall be construed as the commencement, drilling, completion or continued operation of a well within the terms and provisions of each oil and gas lease covering lands within the participating area as to the entire acreage covered by each of said leases; that is, the commencement or drilling of a well to, and the completion or continued operation of a well in any formation *underlying any portion of the participating area* shall, for the purpose of keeping said several leases in force and effect or measuring the development obligations of the lessees in said leases, be construed and considered as the commencement, drilling, completion or continued operation of a well on the land covered by each of said leases, whether or not the well be located on the lands described in such lease.

. . . . . . . . . . . . . . -

"ARTICLE IX.

. . . . . . . . . . . . .

"903. *Each party executing this Agreement acknowledges that no representations not incorporated herein have been made to him or it and that this instrument has been executed and delivered unconditionally.*" (Emphasis added.)

It is clear from the provisions of the unitization agreement that the defendants, as the owners of the oil and gas leases on the lands involved, including the plaintiffs' forty acres, were given the right and power, and had the duty as well, to commence and complete the drilling of wells for the "operation and development" of the entire unit. The plaintiffs alleged the defendants *orally* agreed "that at no time would there be drilled, [upon plaintiffs' forty acres] . . . any additional well or wells for the production of oil or gas incident thereto under the unitization agreement." In other words, the plaintiffs have alleged that, notwithstanding the powers and obligations of the defendants under the written unitization agreement to drill wells upon the plaintiffs' land, the defendants orally agreed with the plaintiffs no such wells would be drilled. It is the plaintiffs' contention the defendants committed fraud by making this oral promise when the defendants had no intention to keep such promise.

It must be observed there is no allegation made in the petition that the unitization agreement omits the oral promise of the defendants, or that the oral promise was supposed to be inserted therein. There is no allegation that the plaintiffs did not understand the legal significance of the unitization agreement, or that they did not know its contents or have any opportunity to learn its contents. Nowhere in the petition is it alleged that the written unitization agreement does not correctly set forth the understanding of the parties at the time it was made, and nowhere in the

petition do the plaintiffs seek to change the written unitization agreement in any manner or to be relieved of any obligations thereunder.

The plaintiffs claim only that the defendants orally agreed to refrain from doing what the defendants in the written unitization agreement were authorized and had the duty toward *all landowners* to do—develop the Brothers Unit. At the same time the plaintiffs freely and voluntarily entered into the written unitization agreement. Under these circumstances they must be presumed to know that its terms were in contravention of the alleged oral promise. (See, *Maltby v. Summer,* 169 Kan. 417, 219 P. 2d 395, and authorities cited therein.)

The doctrine has been well established and frequently applied that where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. (*Oliver v. Nugen,* 180 Kan. 823, 308 P. 2d 132, and cases cited therein.) Under such circumstances parol evidence to show the oral statements, representations and negotiations of the parties which led up to the contract is inadmissible, but there are well-established exceptions to this general rule. (See, *Maltby v. Sumner,* supra; and *Stapleton v. Hartman,* 174 Kan. 468, 257 P. 2d 113.) It has no application to written contracts procured by the fraudulent representations of one of the parties which were relied upon by the other. (*Griesa v. Thomas,* 99 Kan. 335, 161 Pac. 670; *Youmans v. Kansas Tel. Co.,* 132 Kan. 360, 295 Pac. 697; and *State v. Handke,* 185 Kan. 38, 340 P. 2d 877.)

In *Griesa v. Thomas,* supra, it was said:

". . . From the time of Cicero until now it has been the law that fraud vitiates contracts—vitiates everything it touches, and through its perpetration no one acquires a right of action. . . ." (p. 342.)

Misrepresentations in order to constitute actionable fraud must relate to some material present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. (*Kiser v. Richardson,* 91 Kan. 812, 139 Pac. 373; *Federal Agency Investment Co. v. Holm,* 123 Kan. 82, 254 Pac. 391; and *Pioneer Nat'l Life Ins. Co. v. Hall,* 145 Kan. 785, 67 P. 2d 518.) Where an actual fraudulent intent exists and gross injustice would result from application of the foregoing rule, courts have made various exceptions and limitations and have generally declined to

.apply the rule. If there are circumstances tending to show an actual fraudulent intent at the time the promise or representation regarding a future event is made, fraud may be predicated thereon, notwithstanding the future nature of the representations. This result is reached on the theory that a person's intention or belief is a matter of fact, and if a misrepresentation is made with regard thereto, the misrepresentation is one of fact. The gist of the fraud in such cases is not the breach of the agreement to perform, but the fraudulent intent of the promisor, the false representation of a present existing intention to perform where such intent is in fact nonexistent. (23 Am. Jur., Fraud and Deceit, § 106, p. 885; 51 A. L. R. 46, 63; 68 A. L. R. 635; and 91 A. L. R. 1295.) Our decisions are in accord with this exception or limitation. (*Richardson v. Simpson*, 88 Kan. 684, 129 Pac. 1128; *El Dorado Nat'l Bank v. Eikmeier*, 133 Kan. 412, 300 Pac. 1085; *Allen County State Bank v. Wilson*, 140 Kan. 577, 37 P. 2d 1002; *Blankenship v. Porter*, 142 Kan. 284, 47 P. 2d 72; *Greensburg Product Credit Ass'n v. Buckner*, 152 Kan. 398, 103 P. 2d 881; *Olsburg State Bank v. Anderson*, 154 Kan. 511, 119 P. 2d 515; *Denning v. Denning*, 155 Kan. 124, 122 P. 2d 713; and *Kuhn v. Seaton*, 187 Kan. 106, 353 P. 2d 959.)

In *El Dorado Nat'l Bank v. Eikmeier*, supra, it is said:

"A promise to do something in the future, by which the promisor obtained something of value, if the promisor had no intention of performing his promise at the time he made it, amounts to deceit and actionable fraud." (Syl. ¶ 3.)

Where, however, the written contract, to the promisee's knowledge, reveals the falsity of the oral promise, the promisee cannot invoke the rule that fraud may be predicated on a promise made without the intention of performance. The reasoning is set forth in the discussion of the original Pennsylvania rule (the common law rule that parol evidence is inadmissible to vary the terms of a written instrument does not exist in Pennsylvania) in IX Wigmore on Evidence, 3rd Ed., § 2431, pp. 102, 104, as follows:

"The Pennsylvania doctrine has been thus criticized:

"1857, Allen, J., in *Towner v. Lucas Ex'r*, 13 Gratt. Va. 705: 'It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee, cotemporaneously [contemporaneously] with the execution of a bond, promised not to enforce it. Such a principle would nullify the rule; for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud. The true question is, Was there any such agreement, and this can only be established by legitimate testimony. For reasons founded in wisdom and to prevent frauds

and perjuries, the rules of the common law exclude such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself in legal contemplation, cannot be regarded as existing in fact. Neither a Court of law or of equity can act upon the hypothesis of fraud where there is no legal proof of it.' "

(See, also, IX Wigmore on Evidence, 3rd Ed., § 2439, p. 125.)

The rule that, in the absence of fraud, a valid written contract merges all prior and contemporaneous negotiations on the subject is in effect a statement, in different form, of the rule excluding evidence of prior or contemporaneous oral agreements to contradict or to modify a written contract.

The purpose for which parol evidence is admitted to prove fraud is stated in 32 C. J. S., Evidence, § 979d, p. 952, as follows:

"Parol evidence admitted and admissible only for the purpose of proving fraud in a written agreement cannot be legally used to control or vary the terms of such agreement, that is to say, if the evidence is insufficient to defeat the instrument, it cannot be considered for any other purpose. Thus the evidence must tend to establish some independent fact or representation, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, *and not a promise directly at variance with the promise of the writing.*" (Emphasis added.)

The point is emphatically illustrated by a more detailed analysis of the facts in the instant case. The plaintiffs by signing the written agreement as "Royalty Owners" unitized their interest with that of all other "Royalty Owners" in the participating area known as the Brothers Unit for the express purpose of more efficiently developing, producing and operating the Brothers Unit. (By the terms of the agreement a "Royalty Owner" is defined as "one who, subject to an Operator's right to search for and produce oil, gas or other hydrocarbons, owns land, mineral rights, royalties, overriding royalties, oil payments, gas payments, or other rights in any oil, gas or other hydrocarbons that may be produced from the participating area and who has signed this Agreement.") There was nothing in the unitization agreement to indicate there was to be no development of the plaintiffs' tract. By the unitization agreement the plaintiffs expressly acknowledge in writing to each of the other "Royalty Owners" executing the agreement that *"no representations not incorporated" in the agreement have been made to them and that the "instrument has been executed and delivered unconditionally."*

Under these conditions and circumstances the plaintiffs in effect

were attempting to perpetrate a fraud upon the other "Royalty Owners" who signed the unitization agreement. If the "operators" (defendants) in the Brothers Unit had honored the alleged oral agreement, operation and development of the Brothers Unit would have been confined to the participating area other than the forty acres of the plaintiffs, contrary to the unitization agreement, and the plaintiffs would have shared in the oil produced from the other land under the terms of the unitization agreement.

The proposition may thus be simply stated as follows: If A, B and C enter into an express written contract, can A assert fraud against B in procuring A's execution of such contract for B's deceit in making an oral promise contemporaneously and directly at variance with the written contract, where the over-all effect of such oral promise, but for the deceit of B, was an independent conspiracy of A and B to commit a fraud upon C? Clearly, the answer is in the negative. Wholly aside from the reason heretofore given, all being parties to the *same written contract* concerning which the action is based, A cannot take advantage of his own fraud. (See, *Fleming v. Greene,* 48 Kan. 646, 30 Pac. 11; and G. S. 1949, 21-551.)

Analogous cases are found in *Holland Furnace Co. v. Williams,* 179 Kan. 321, 295 P. 2d 672; and *Colt Co. v. Kocher,* 123 Kan. 286, 255 Pac. 48, dealing with sales contracts, where the written contract shows on its face that it is not to be executed by the agent for the company, but is to be sent to the company to be approved by some officer or manager of the company, and the purchaser represents in his contract that no representations have been made to him other than those contained in the written contract. These cases hold the company has a right to rely upon such stipulations by the purchaser.

The clear import of Article IX, Section 903, in the unitization agreement was to protect each party executing the agreement from representations or promises inconsistent with the express written terms of the unitization agreement.

Clearly, the parties to the unitization agreement were entitled to rely upon its provisions. The appellants (plaintiffs) had full knowledge of the fact that the appellees were not obligated by the terms of the unitization agreement to refrain from drilling on the appellants' land. In fact, by the unitization agreement their obligation was to the contrary, if prudent development of the participating area covered by the unitization agreement required the drilling of a well or wells upon the appellants' land.

For the reasons heretofore assigned we hold the petition failed to allege sufficient facts to state a cause of action for fraud.

Other questions presented by the appellants in their brief, including whether or not the cause of action is barred by the statute of limitations, are immaterial to our decision herein.

The judgment of the lower court sustaining a demurrer to the petition is affirmed.