No. 19,635.

THOMAS J. HART et al., Partners, doing business as THE NA-TIONAL ENGRAVING COMPANY, *Appellants,* v. J. T. HAYNES and FRANK E. HART, *Appellees.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Procured by Fraud—Sufficient Bill of Particulars.* A plain statement of facts in the simple language of a layman, showing that a written contract was procured by fraud, is a sufficient pleading in an action before a justice of the peace.

2. PAROL EVIDENCE—*Admissible to Prove Fraud in Procuring Contract.* The rule that parol testimony can not be admitted to vary the terms of a written contract has no application to an issue of fraud in the making or procuring of the contract.

3. TRIAL—*Controverted Facts—Judgment Not Disturbed.* Rule followed that the determination of the trial court on controverted facts, when based upon sufficient and competent evidence, will not be disturbed on appeal.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed July 10, 1915. Affirmed.

*A. A. Osgood, Paul H. Kimball,* and *Webster W. Kimball,* all of Parsons, for the appellants.

*W. S. Hyatt,* and *Paul McCaskill,* both of Parsons, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs in this action were engaged in the stationery and engraving business in New York City. The defendants were engaged in operating a steam laundry in Parsons, Kan. On March 21, 1912, the defendants executed and delivered to the agent of the plaintiffs a contract in the form of a written order for certain stationery and which reads in part as follows:

"You are hereby authorized to furnish the undersigned . . . 200 hundred Post Cards, 3¼ x 5½ inches, weekly (different illustration and ad each week) for our exclusive use in advertising the Laundry business in the City of Parsons, . . . State of Kansas only, for a term of not less than one year from commencement of service, and thereafter until notified in writing to discontinue same, for which we agree to pay to your order at New York the sum of One dollar for each hundred Post Cards. F. O. B., New York. Payments to be made at the end of each month."

Hart v. Haynes.

On March 27, 1912, defendants wrote to plaintiffs as follows:

"We received your contract, and found one change should be made; where it says weekly the understanding was that 200 were to be sent every other week."

Some further correspondence passed between the parties, the tenor of which was that the defendants were insisting that the cards were to be shipped every second week and the plaintiffs insisting on the literal terms of the contract. The cards were shipped every week but the defendants refused to receive them, and at the end of the year plaintiffs filed suit setting up the contract, to which defendant J. T. Haynes answered as follows:

"J. T. Haynes, the above named defendant, for his answer to the bill of particulars filed herein says as follows: First.—He admits that he is the successor of Hart & Haynes, former partners. Second.—He admits the signature of the contract filed herein. Third.—He states that the said contract was obtained by fraud, in this, that he stated to the agent of the plaintiffs that he would take the cards on for two weeks for a period of one year; that he placed his signature upon the contract believing that it so stated; he then noticed that the contract stated every week instead of every two weeks and called the agent's attention to it, which the agent replied by taking the contract and said, 'I will fix that now,' and made a mark upon the contract that the defendant believed had changed the contract as he said there, 'That's all right.' The defendant further states that he never agreed at any time to take the cards as stated in said contract, and that he at once notified the said company of all the above facts as soon as they notified him of receiving the contract in its present form."

From a decision before a justice of the peace the case was appealed to the district court and tried on the same pleadings. A demurrer to defendants' answer was overruled and oral testimony and depositions were admitted, and the district court rendered judgment in favor of the defendants for costs.

It is agreed by the litigants that the eight assignments of error may be reduced to three propositions: (1) Did the answer of the defendants contain facts stating a good defense to plaintiff's bill of particulars? (2) Did the court err in permitting parol evidence to be given on behalf of defendants which varied and altered the terms of a written instrument? (3) Is the judgment of the trial court supported by the evidence?

(1) We think that the defendants' answer makes a very plain and simple allegation of fraud and that it gives the details

showing how the fraud was perpetrated. The pleadings before justices of the peace are characterized by the code as bills of particulars. (Jus. Civ. Code, §71.) In the early case of *Lobenstein v. McGraw,* 11 Kan. 645, Mr. Justice Brewer said:

"It is not to be expected that a bill of particulars will be drawn with the same fullness and precision as a petition. Much of the business in justices' courts is done by the parties themselves, and not through the instrumentality of attorneys. It is well that this is so, for thus a convenient, expeditious, and cheap method of settling minor disputes, and collecting small accounts, is furnished to all. The justices themselves are selected, not on account of their legal knowledge, but because of their good common sense. The chief value of these tribunals, to the poorer classes at least, would be lost if the rules of pleading in them were made so technical and difficult that the services of an attorney were necessary in every case." (p. 648.)

Again, in *M. K. & T. Rly. Co. v. Brown,* 14 Kan. 557, it was said:

"Was the bill of particulars sufficient? It must be remembered that pleadings in a justice's court are not to be subjected to the same strictness of construction as those in the upper courts. (*Lobenstein v. McGraw,* 11 Kan. 645; *Kaub v. Mitchell,* 12 Kan. 57.) So that if the essential facts are stated in such a way that the defendant can not be misled as to the real claim against him, the bill must be taken as sufficient. Tried by this rule, the bill is plainly sufficient." (p. 560.)

The case of *K. P. Rly. Co. v. Taylor,* 17 Kan. 566, 568, is to the same effect. (See, also, *Olsson v. Lawrence Township,* 93 Kan. 440, 443, 144 Pac. 997.)

Applying these thoroughly established principles to the instant case, we must hold that the defense of fraud was sufficiently pleaded. We might go further and say that this particular defense, that the contract was procured by fraud, was sufficiently pleaded to satisfy any court, no matter how exacting and technical. Nor should it be necessary to cite authorities to show that a plea of fraud is a good defense to a contract. In *Klemp v. Winter,* 23 Kan. 699, it was said:

"That fraud vitiates everything it touches,—final judgments, final orders, final settlements and contracts, as well as things of less consequence,—we suppose all persons will admit. And that courts, possessing general equity or chancery jurisdiction, have the power to grant proper relief in all cases of fraud, we suppose will also be admitted." (p. 703.)

An instructive note on the subject of fraud as affecting contracts will be found in 37 L. R. A. 593 *et seq.*

(2) Passing to the next question, we do not enter any debatable field of the law. The rule that parol testimony can not be used to vary the terms of a written instrument has no application to an issue of fraud in the making or procuring of the contract. The courts will not permit their hands to be tied in the administration of justice by restricting the realm of inquiry on an issue of fraud, and such an issue may be maintained by any testimony competent under the ordinary rules of evidence. Were this not so, fraudulent contracts could seldom be overturned if the perpetrators of the fraud had the foresight to have their contracts reduced to writing and executed.

We do not overlook the recital in the caption of the contract or order which provided that the plaintiffs could not be held responsible for any provisions not embodied in writing and that the contract could not be canceled without the written consent of the company. That recital could not limit or restrict the rights of the defendants in a defense that the contract was procured by fraud.

(3) Was the judgment of the trial court supported by the evidence? Clearly so. It is of no consequence that the testimony might be conflicting. The determination of facts upon conflicting testimony is clearly and almost exclusively within the province of the trial court. That court sees the witnesses personally. It can examine their demeanor, their apparent frankness or want of it. A court of review is restricted to the printed pages of a record, and ordinarily it is bound to accept the findings of the trial court as the facts in the case.

Substantial justice seems to have been done in the case at bar. Laying aside for the moment the testimony of defendant Haynes narrating how he was duped by the plaintiffs' agent, it will be observed that he acted promptly in disaffirming the contract as fraudulent. The later correspondence showed that he was standing on his rights as he understood them. The contract provided for monthly payments. The plaintiffs persisted in sending the cards once a week, well knowing that the defendants would resist payment. Assuming that the agent acted wholly without authority in making a bargain with the defendants for a shipment every two weeks instead of a shipment every week, plaintiffs would be in a

much stronger equitable position if they had treated the contract as closed by defendants' breach of it, the refusal to accept the shipments, and the refusal to pay at the end of the first month. There is no error in this case, and the judgment is affirmed.