No. 33,258

The Pioneer National Life Insurance Company, *Appellant*, v. Martin L. Hall, *Appellee*.

(67 P. 2d 518)

Opinion filed May 8, 1937.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove,* all of Topeka, *C. W. Burch, B. I. Litowich, LaRue Royce* and *E. S. Hampton,* all of Salina, for the appellant.

*Ralph Knittle* and *Van Earl Danner,* both of Salina, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action on a promissory note. Defendant prevailed, and plaintiff appeals.

The petition contained the customary averments of an action on a promissory note when held by an endorsee of the payee. It alleged the note was made payable to one J. E. Gardiner on August 12, 1931, and was purchased by plaintiff for value, in good faith and without notice, on August 14, 1931. The note was executed in the

sum of $101.12, which was the amount of the first annual premium. The note was payable in monthly installments. At the time of application insured made a down payment of $11.12.

The last amended answer contained a general denial except as to matters admitted. It expressly denied plaintiff purchased the note in good faith and without notice and then stated in substance:

J. E. Gardiner was the representative and agent of the plaintiff company, with authority to sell life insurance for it, and as such agent on August 12, 1931, induced defendant to execute and deliver to him as agent of plaintiff a written application for a twenty-year endowment life insurance policy with coupons attached; the policy was for $2,000 and the annual premium was to be $101.12; at the same time, and as a part of the same transaction, Gardiner, as agent of plaintiff, induced defendant to execute and deliver to him the note in question, which represented the first year's premium, and induced defendant to pay to him as agent of plaintiff the sum of $11.12 to be applied as a payment on the note; defendant was induced to do these things by means of certain false and fraudulent representations of plaintiff's agent, as follows, to wit:

"That if defendant would take out said policy, said policy would provide that at the end of twenty years, if defendant paid all of the annual premiums provided in said policy, he would be entitled to receive, *in cash,* under said policy, if he desired to surrender the same, the sum of $2,000 and the value of the remaining coupons attached to said policy, amounting to $674; or if defendant did not surrender said policy, he would then be entitled to a paid-up policy for $3,000." (Italics inserted.)

The answer then pleaded the other necessary elements of fraud, including the averment that by reason of the above representations defendant executed the application for the policy and the note in question and that the policy did not contain the above-quoted provisions. To the answer were attached copies of the application and policy.

Plaintiff filed a reply and later an amended reply. In substance the latter stated:

The copies of the application and policy attached to the answer were true copies of the respective original instruments; the application was duly received and the policy was transmitted to defendant on August 14, 1931; on August 27 defendant acknowledged receipt thereof, which reads:

POLICY RECEIPT
THE PIONEER NATIONAL LIFE INSURANCE COMPANY,
TOPEKA, KANSAS

I hereby acknowledge receipt of, and accept policy No. 2404 issued by the Pioneer National Life Insurance Company, upon my life, and certify that it is the form of policy applied for by me, and that same is satisfactory.

MARTIN L. HALL, *Insured.*

Dated at Salina, Kan., this 27th day of August, 1931.

(Please sign and return at once.)

The amended reply further stated in substance: Plaintiff relied upon the facts set out in the application, policy, note and receipt, and thereafter continued to protect and insure the life of defendant under the terms and provisions of the policy until September 12, 1932, when the policy was canceled for nonpayment of the second year's premium, due August 13, 1932; defendant never complained to plaintiff about the policy or any alleged misrepresentation or fraudulent acts on the part of the agent, Gardiner, in procuring the application, and never notified plaintiff to cancel the policy.

Upon the issues thus joined a jury was waived and the case was tried to the court. No findings of fact or conclusions of law were made. Plaintiff admits, in the absence of findings of fact, it must be presumed the trial court found plaintiff was guilty of fraud in the procurement of the application and note.

Plaintiff's first contention is no actionable fraud was shown. The policy was a twenty-year endowment life insurance policy, with coupons attached, and was for the sum of $2,000. Such a policy was applied for by and delivered to defendant. It will be observed the alleged fraudulent representations relied upon pertain to the option provision of the policy. The policy contained six guaranteed options of settlement. It is not deemed necessary to set out the options provided by the policy. It is sufficient to say the policy did not contain an option such as that described in the alleged misrepresentations.

Plaintiff insists defendant's own testimony did not support the misrepresentations pleaded but that on the contrary it did support one of the option provisions contained in the policy. Defendant did at first testify as follows:

"He [meaning plaintiff's agent] had a policy on his desk and had read different articles over about it and he told us at that time 'we got all the coupons on this policy except the first three which went for the stock that we was receiving, which was four shares on a thousand. At the end of twenty years if

we left all the coupons intact on that policy we would draw $2,000 *worth of insurance* besides the coupons, which came to the amount of between six and $700.'" (Italics inserted.)

His later testimony, however, substantially supported the allegations of his answer. Furthermore, there were other witnesses who testified they were present and heard the representations in question. Their testimony, while varying slightly, in substance supported the misrepresentations pleaded in defendant's answer.

Plaintiff next contends certain testimony of defense witnesses tending to support the claim of fraud was improperly admitted over its objection. This complaint pertains to testimony of witnesses who did not hear the particular conversations between defendant and plaintiff's agent. They testified, in effect, that they had purchased policies similar to the one in question from plaintiff's agent at about the time this policy was sold to defendant, and that plaintiff's agent made similar misrepresentations to them. Plaintiff insists that since those conversations were not had in the presence of the defendant they were not admissible. The contention is untenable. The litigants had joined issue on the subject of fraud. On that issue intent was an essential element. The record discloses this particular testimony was admitted by the trial court, not for the purpose of proving the particular fraudulent representations in issue, but only for the purpose of tending to show a course of conduct, system, motive or intent. For that purpose alone the testimony was admissible. (*Elerick v. Reid,* 54 Kan. 579, 38 Pac. 814; *Bank v. Reid,* 86 Kan. 245, 120 Pac. 339; *McCauley v. Custer,* 93 Kan. 27, 143 Pac. 489.)

It is further urged the claimed fraudulent representations did not constitute actionable fraud, as they did not relate to some past or existing fact. True, in order to constitute actionable fraud, the representation must relate to some material, past or present fact. (*Federal Agency Investment Co. v. Holm,* 123 Kan. 82, 254 Pac. 391.) Certainly the representations involved were material. Furthermore, did they not actually pertain to an existing fact? The contention they did not is based on a part of the quoted portion of the answer, to wit: "That if defendant would take out said policy, said policy would provide, . . ." It is always imperative that such representations be considered and interpreted in accordance with the circumstances under which they are made and not apart therefrom. Of course, when the conversation occurred no policy had yet been issued. Had it already been issued there would have been no occasion for the conversation. The very

purpose of the conversation was to persuade defendant to contract for the policy. What policy? A policy, the terms and conditions of which would be determined and ascertained after defendant had applied therefor? Certainly not. The agent, according to his own testimony, was explaining the terms and provisions of the form of a policy then in existence. He was advising defendant concerning the express terms contained in the particular policy under consideration. There was evidence he had a policy on the desk before him during the conference and read extracts from it. The evidence of misrepresentations related solely to the present terms and provisions contained in the policy which was then sold.

Plaintiff relies on the decision in the Holm case, *supra*. It was there said:

"Rule followed that fraudulent representations to constitute fraud must relate to some material, past or existing fact:" (Syl. ¶ 2.)

The Holm case was decided against the defendant, who was the insured. In that case the insured contended the representation that the shares of stock would be paid for within five years from dividends accruing from the policies was a representation which, if false, constituted fraud. In answer to that contention this court said:

"We are of the opinion that such representation was not one of past or existing facts." (p. 86.)

Clearly it was not. The dividends could accrue only in the future, and if and when they were earned. The Holm case is not authority for plaintiff's contention on the question of actionable fraud.

It will be observed that thus far we have considered only whether there was evidence of misrepresentation and not whether defendant was actually defrauded in the procurement of his application and note and in the final acceptance of the policy. We have previously indicated defendant's testimony both supported and contradicted the charge of misrepresentation contained in his answer. It is necessary that we now examine other necessary elements of fraud. On which of the representations which defendant testified the agent made, did defendant in fact rely? What was their effect on his mind? What kind of a policy did defendant really think he was getting? He alone can answer that question. His own answer, however, leaves that question open to pure speculation and conjecture. After having made the conflicting statements defendant was recalled for further cross-examination and asked just what kind of a policy he thought he was getting. The direct question and plain answer were:

"Q. Did you think you were having a twenty-year *endowment* policy under this contract or you would get this amount of money *in cash* at the end of twenty years? A. *At that time I didn't know what I was getting.*" (Italics inserted.)

The answer explains the reason for his previous conflicting statements. His testimony admits he was confused in his own mind. It discloses he really did not know, from the representations made, what he was to get. Notwithstanding that fact, he purchased the policy. That sort of testimony does not support the allegation the agent represented defendant would get a policy with a specific provision, that he believed it, and that he relied and acted upon that specific representation.

Furthermore, this policy was transmitted to defendant on August 14, 1931. He did not acknowledge receipt thereof until August 27. When he did finally acknowledge receipt thereof, he stated:

"I hereby acknowledge receipt of, and *accept* policy No. 2404, issued by the Pioneer National Life Insurance Company, upon my life, *and certify that it is the form of policy applied for by me,* and that same *is satisfactory.*" (Italics inserted.)

It should be observed there is no contention or the slightest intimation this receipt was procured through any semblance of fraud. The policy and receipt were in defendant's own hands for unmolested inspection. Concerning the signature and return of this receipt to the company, defendant testified:

"Q. And you read this [referring to the receipt] over before you signed it? A. Yes.

"Q. And you sent it to the company at Topeka, Kan.? A. Yes, sir.

"Q. That was sent in by you on August 27, 1931? A. Yes, sir.

"Q. And you received the policy in a letter from the company dated August 14, 1931? A. Yes, sir.

"Q. And between the time you received the policy and the time you sent that receipt back, you looked through the policy and read it through? A. I read the policy a short time after I received it. I suppose I read it before August 27.

"Q. And you read this part about the *guaranteed option of settlement during that period of time?* A. Yes, sir.

"Q. You knew when you received the policy that your insurance under this policy was in force, did you not? A. Yes, sir." (Italics inserted.)

The gist of defendant's own testimony therefore is not that he was defrauded, but that at the time he bought the policy he did not know what he was getting but that nevertheless he bought it, and that when he did get it he read it, including the particular portion thereof

pertaining to the guaranteed option of settlement now in dispute, and having read it he accepted it, stated it was the form of policy for which he had applied, that it was satisfactory, and that he knew his insurance under that policy was in force.

There was some testimony he notified a representative of the company at Ellis about some misunderstanding or asked some advice about the policy ten or fifteen days after he received it. That is all the record discloses concerning that incident. That fact, however, is of slight consequence, if in fact of any consequence, in view of defendant's other testimony. In the month of December, 1931, about four months after the policy had been delivered to defendant, his counsel in person, in effect, advised the president of plaintiff company in Topeka that misrepresentations had been made concerning the policy and that it should be canceled and defendant's note should be returned. The president advised him this would not be permitted and that the company intended to collect on the note. In the Holm case, *supra*, it was said:

"Having signed receipts stating that he had examined the policies and found them as represented, and having retained them for more than two years, he is precluded from asserting now that they were invalid and thereby avoiding payment of his note given in consideration therefor. (See *Northwestern Nat'l Life Ins. Co. v. Evans*, 214 S. W. 598.)" (p. 86.)

In the light of defendant's own testimony, including the admissions contained in the written receipt, which it is not claimed was procured through fraud, defendant was in no position to demand cancellation of the policy and the return of his note.

The judgment is reversed with directions to enter judgment in favor of plaintiff as prayed for in its petition.