No. 38,727

ANTHONY G. STEGMAN, *Appellee*, v. PROFESSIONAL AND BUSINESS MEN'S LIFE INSURANCE COMPANY, *Appellant*.

· (252 P. 2d 1074)

Opinion filed January 24, 1953.

*John A. Etling,* of Kinsley, argued the cause, and *W. N. Beezley,* of Kinsley, and *Joseph P. Constantine,* of Denver, Colorado, were with him on the briefs for the appellant.

*Charles Vance,* of Liberal, argued the cause, and *H. Hobble, Jr.,* and *Chester A. Nordling,* both of Liberal, and *J. S. Brollier,* of Hugoton, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The defendant insurance company appeals from a money judgment rendered against it in an action by the insured to recover the first premium paid on the policy on the ground it was obtained by fraud.

The petition, in substance, alleged: The policy was solicited by defendant's agent April 3, 1950; it was delivered May 1, 1950; misrepresentations were not discovered until May 25, 1950; the policy was returned June 13, 1950, on which date plaintiff also rescinded the contract in writing; at all times prior to rescission plaintiff believed the policy to be as represented by defendant's agent.

The petition further alleged:

"(5) That said Giles H. Florence, agent of the defendant, at said time and place orally represented and stated to plaintiff that in consideration of the payment by the plaintiff to the defendant of $1,787.50 as the first annual premium, the defendant would issue to plaintiff a policy or contract of insurance on plaintiff's life in the face amount of $25,000.00;

"(6) That at said time and place said agent of the defendant orally represented and stated to the plaintiff that said policy or contract of insurance which would be issued to the plaintiff by the defendant would provide, among other benefits, the following:

"(a) That after the payment of twelve annual premiums in the amount of $1,787.50 each, as the same became due, the policy would be paid in full and each year thereafter the defendant would pay to the plaintiff during his lifetime an amount not less than a sum equal to ten per centum per annum on all funds and accumulations invested with said defendant by the plaintiff;

"(b) That after the payment of eight annual premiums in the amount of $1,787.50 each, as the same became due, the policy would be paid in full if no coupons had been detached from the policy and surrendered to defendant;

"(c) That after the payment of two annual premiums in the amount of $1,787.50 each, as the same became due, coupons attached to said policy could be detached and surrendered to defendant in payment of the third annual premium;

"(d) That after the payment of the third annual premium, no coupons having been surrendered by plaintiff, the defendant would pay to the plaintiff an amount equal to ten per centum per annum on the amount of the first two annual premiums paid by plaintiff, from the dates of such payments, or such

amount could be left with the defendant as an accumulation and in such event it would earn and defendant would pay to plaintiff an amount not less than ten per centum per annum on such accumulations;

"(e) That any advance payment of premiums made by plaintiff to defendant would earn three per centum per annum to the date such premium was due, and thereafter it would earn and defendant would pay to plaintiff not less than ten per centum per annum on such amount. . . ."

The petition further, in substance, alleged:

All the false representations were relied on by plaintiff and induced him to sign the application for insurance; defendant's agent assured plaintiff the application was drawn in accordance with his oral statements and representations and plaintiff signed the application without reading it or having an opportunity to do so; the policy does not contain any of the benefits which defendant's agent represented it would contain and defendant's agent knew it did not; on receipt of the policy plaintiff assumed it was as represented; the misrepresentations were not discovered until on or about May 25, 1950; defendant has refused to return the money paid to its agent or to deliver a policy which conformed to the representations plaintiff understood and believed it would contain.

The letter of rescission was attached to the petition. It reads:

"Gentlemen:

"At the request of Anthony G. Stegman, for whom I am attorney, we˙ are returning herewith your Policy No. 2998-S, for the reason that this contract is not as represented by your agent, Mr. G. H. Florence, at the time he obtained the application for the same. He represented and stated to the insured that this policy would provide that your Company would pay not less than ten per centum per annum on all funds invested in this policy, and that each annual premium would start drawing ten per centum per annum from the date the same was paid, and that after the payment of twelve annual premiums, the insured would thereafter have an annual income for life in an amount not less than ten per centum per annum on all funds and accumulations invested in the policy, and that the face amount of the policy would be paid to the beneficiary upon the death of the insured. These representations and statements were believed by the insured and were the sole deciding factors in making application for this insurance.

"Since this policy does not conform to the representations made by your agent, the insured has elected to rescind the agreement. You may consider this as a formal demand on behalf of the insured for a prompt return of all funds paid for this policy."

Defendant moved to strike subdivisions (b), (c) and (d) of paragraph 6 of the petition on the ground such complaints were not made the basis of rescission, plaintiff had waived them and was estopped to rely thereon. The motion was overruled. Defendant

did not demur to the petition but answered. The answer denied the alleged misrepresentations and further, in substance, alleged:

Plaintiff and defendant's soliciting agent examined the policy together on the delivery thereof; plaintiff acknowledged receipt of the policy by letter in which he stated defendant's agent, Mr. Florence, delivered the policy and explained it thoroughly and that plaintiff found it to be the same as when he accepted the offer.

Plaintiff's reply denied all allegations of the answer not admitted in the petition and, in substance, further alleged:

On delivery of the policy defendant's agent advised plaintiff the policy complied with the representations he previously had made as alleged in the petition; the agent represented the instrument plaintiff signed constituted a receipt for such policy; that plaintiff was unable, by reason of lack of knowledge and experience in insurance and legal matters, to determine whether such policy did or did not comply with such representations.

On the issues thus joined the action was tried. The jury rendered a general verdict for plaintiff and answered special questions, as follows:

"No. 1. Did Giles H. Florence, soliciting agent of the defendant, make any misrepresentations with respect to the terms of the life insurance policy to be issued by defendant to plaintiff? A. Yes.

"No. 2. If you answer question No. 1 in the affirmative, then state what said misrepresentations were made. A. He was led to believe he would draw 10% interest on all money paid in to Company after 3rd payment was made.

"No. 3. State the time or times when such misrepresentations were made. A. On solicitation of application for said policy, also again when policy was delivered.

"No. 4. At the time said policy was delivered to said plaintiff did the plaintiff have the opportunity to examine the same? A. Yes.

"No. 5. At the time said policy was delivered to said plaintiff did the plaintiff examine the same? A. Examined policy to some extent.

"No. 6. If you answer 'Yes' to question No. 5, then did the plaintiff know and understand the terms and provisions of the policy? A. No."

Defendant did not move to have any finding made more definite or to strike any finding. It moved for judgment on the findings *non obstante veredicto*.

Defendant assigns as error the overruling of its (1) demurrer to plaintiff's evidence (2) motion for judgment *non obstante veredicto* and (3) its motion for a new trial. The assignments will be treated in the order stated. In support of the first assignment of error defendant argues (1) plaintiff's evidence failed to prove the misrepre-

sentations relied upon (2) his own evidence barred recovery and (3) notice of rescission was not timely made.

For the purpose of reviewing the ruling on the demurrer it is unnecessary to narrate all of plaintiff's own testimony or that of other witnesses who testified in his behalf. For the purpose of disclosing the motive and intent of defendant's soliciting agent to defraud, some eight other witnesses testified, in substance, to the same or highly similar statements made to them by the same agent. Neither are we concerned with any possible contradictions in plaintiff's testimony. On demurrer only evidence favorable to plaintiff is considered.

Defendant argues testimony pertaining to allegations in paragraph 6 (b), (c) and (d) of the petition cannot be considered for the reason they were not set forth in plaintiff's letter of rescission. We think defendant's interpretation of the notice of rescission is too narrow. Some of the allegations defendant moved to have stricken from the petition are not too happily worded. Considered together and with paragraph 6 (a) we think they properly may be regarded as embraced within the notice of rescission. We also find testimony introduced without objections which proves or tends to prove allegations defendant sought to have stricken. We think such testimony also supports the jury's special finding 2 but, of course, that point will be treated later. We find no motion to strike such testimony as being outside the issues.

On demurrer the real question is whether there was testimony which proved or tended to prove plaintiff was induced to apply and give a receipt for the policy as a result of actual fraud on the part of defendant's agent. We would be justified in concluding this point by merely stating there was abundant evidence to require the submission of that question to the jury. A brief summary, however, of plaintiff's own testimony will be made. It was, in substance, as follows:

Prior to signing the application for the policy defendant's agent informed plaintiff this policy contained the standard form of life insurance but in addition thereto had a special investment feature which the defendant company was making available only to a very select group of influential people; the company had been organized about three years and was writing a special policy known as a "Founders' Policy"; the agent did not show him the policy but represented what it contained; plaintiff relied on such representations and under no circumstances would have made application

for the policy had he known such representations were false; he signed the application April 3, 1950; it was delivered April 25, 1950; his attorney gave notice to rescind the policy June 13, 1950; when the agent delivered the policy they examined it together; the agent assured him the provisions of the policy were exactly as he previously had told him they were; the agent told him what the terms of the policy meant; plaintiff would not have been able to understand the terms of the policy if he had tried to examine it alone; the agent again assured him the policy in addition to the standard life insurance provisions provided for payment of ten per cent per annum on all the money plaintiff would put into it and that after payment of the third premium the company would pay him ten per cent on the amount of each previous premium; it was the investment feature in which plaintiff was primarily interested and except for the investment features as represented by the agent plaintiff would not have applied for the policy or receipted for it.

Plaintiff was a farmer thirty-eight years of age and the operator of a small grain elevator. On cross-examination he testified:

"I don't remember everything, but I remember the most important things about the conversation.

"He did tell me that if I left the coupons in and paid twelve annual premiums, I would mature the $25,000.00 policy but would still be entitled to receive for the balance of my life, dividends on the policy. I would get 10% dividends the balance of my life, also 10% on all money invested. I was to get dividends all along. I bought the policy to make 10% on all the dollars I had put in plus dividends and accumulations and still have a life insurance policy that insured my life for $25,000.00."

On cross-examination plaintiff further testified:

"Q. Do you suppose you could have been confused on the question of this 10 per cent, as to whether that was 10 per cent on the net profit or 10 per cent on the money invested? A. I would have been if he hadn't figured it out on paper, the amount of dollars I would have invested after 12 years of time and the money I was to get after 12 years.

"Q. Didn't he tell you after the policy was paid up you would continue to participate in the profits, and on the past experience of the company that dividend had not been less than 10 per cent on the premiums paid; is that what he told you? A. I don't know what he told me about the dividends. I was just interested in buying, not an insurance policy, but an investment. That is what he sold me, was an investment.

"Q. If you received dividends on this investment, that is an investment, isn't it? A. It was supposed to be 10 per cent on the money I had invested and accumulated interest."

There was much other testimony from which the jury had a right to believe defendant's agent assured plaintiff he would draw ten

per cent interest on every dollar he paid to defendant. Of course, the policy did not provide anything of the kind but plaintiff applied for and gave a receipt for the policy in the firm belief the agent had truthfully represented and interpreted the terms thereof. The agent's motive and intent to defraud the plaintiff were further shown by the testimony of some eight other persons to whom he had made the same or highly similar false representations. These false representations to others were made both before and after those made to plaintiff.

The issue in this case was fraud. The agent's motive and intent were essential elements of fraud. For the sole purpose of showing motive and intent to defraud the testimony of these other witnesses was competent. (*Pioneer Nat'l Life Ins. Co. v. Hall*, 145 Kan. 785, 788, 67 P. 2d 518, and cases therein cited.) This testimony being a necessary element of plaintiff's cause of action it, of course, was properly admitted as a part of plaintiff's case in chief.

To be sure in order to constitute actionable fraud representations must relate to some material, past or present, fact. Here the representations did so. They pertained to the terms of an alleged existing policy which was offered to plaintiff. (*Pioneer Nat'l Life Ins. Co. v. Hall*, supra, p. 788-789.)

Plaintiff's admission he examined the policy with the agent, when considered with his testimony that he was unable to determine its meaning and relied on the agent's interpretation thereof, did not bar recovery. Neither did his written receipt evidencing delivery of the policy bar his recovery in view of the explanation he signed it by reason of the false representation the policy was precisely as the agent previously had described it. Therefore, by the statement contained in the receipt, to wit, "I found it to be the same as when I accepted the offer," plaintiff in legal contemplation merely said that on the basis of the agent's representations and interpretation of the policy he found it to be the same policy as previously offered by the agent. Unless this receipt may be so interpreted a receipt could never be explained although obtained by the rankest kind of fraud. Ordinarily a receipt is merely an acknowledgment of the delivery of something. But even where a receipt contains contractual features it may be explained where execution thereof is induced by fraud. (32 C. J. S., Evidence, § 926a.) If the rule were otherwise it would preclude the setting aside of contracts induced by fraud which, of course, has never been true.

Here the entire transaction was permeated with fraud from its

inception. An invariable qualification of the rule which makes parol evidence inadmissible to vary the terms of a written instrument is the one which permits such testimony where a contract is induced or procured by fraud. (*Hart v. Haynes,* 96 Kan. 262, 150 Pac. 530; *Griesa v. Thomas,* 99 Kan. 335, 339-341, 161 Pac. 670; *Boxer v. Watchorn Oil & Gas Co.,* 120 Kan. 278, 243 Pac. 316; *Mills v. Purdy,* 142 Kan. 133, 137-138, 45 P. 2d 1049; *Maltby v. Sumner,* 169 Kan. 417, 219 P. 2d 395.) In the Maltby case, *supra,* it was held:

The general rule is that a contracting party is bound by an agreement to which he assents, where the assent *is uninfluenced by fraud, violence, undue influence, or the like,* and he will not be permitted to say he did not intend to agree to its terms." (Our italics.) (Syl. ¶ 4.)

Here the application and receipt were both obtained by fraud. Fraud vitiates whatever it touches including final judgments and final orders as well as contracts. (*Klemp v. Winter,* 23 Kan. 699, 703.) In *Mills v. Purdy,* supra, we quoted with approval from *Berry v. Whitney,* 40 Mich. 65, as follows:

" 'Fraudulent representations as to the legal effect of an instrument will void it, even if made to one who has actually read it, if unable to judge of its true construction. But the fraud must be contemporaneous with the execution of the instrument and must consist in obtaining the assent of the party defrauded, by inducing a false impression as to its legal or literal nature and operation'." (p. 137.)

Likewise in *Griesa v. Thomas,* supra, it was said:

"However dogmatically the rule is stated and reiterated in the decisions and textbooks that parol evidence is inadmissible to show the oral representations, negotiations and statements of contracting parties, leading up to their bargain, when later their contract is reduced to writing and signed by them, an invariable qualification of that rule is usually appended making an exception in all cases of fraud pleaded and proved." (p. 339, 340.)

Defendant relies on cases in which it has been held a party cannot recover if his own evidence establishes a valid defense to the action. Manifestly such decisions are sound but they are not controlling here. As previously stated, in ruling on a demurrer a court does not consider conflicting testimony. Here the court was concerned only with the testimony which supported the alleged fraud.

Was the notice of rescission too late? The evidence discloses the policy was delivered April 25, 1950. Plaintiff was lulled to sleep concerning its terms by the agent's fraud. Within two or three weeks after delivery of the policy plaintiff informed some local insurance men about the nature of the combined policy and investment he had purchased. They informed him he had not ob-

tained what he thought he had purchased. Thereafter plaintiff consulted an attorney who advised him likewise. The policy was rescinded June 13, 1950. Plaintiff had a reasonable time within which to rescind after discovery of the fraud. Mere lapse of time is not necessarily determinative where no prejudice from delay results to the other party. Here no prejudice resulted to defendant. Whether notice of rescission was given within a reasonable time under all the circumstances was properly submitted to the jury. By its general verdict it resolved that issue in plaintiff's favor. The rule was well stated in the early case of *Basye v. Refining Co.*, 79 Kan. 755, 101 Pac. 658, in which the action was tried by the court. It was there said:

"Whether the delay in moving in the matter was under all the circumstances so great as to amount to a bar was a fair matter for the consideration of the trial court, and no reason is seen to disturb the conclusion reached. The mere question of how much time was permitted to elapse is not necessarily determinative. The important consideration is whether the period was long enough to result in a prejudice to the other party." (p. 756.)

*Wood v. Staudenmayer*, 56 Kan. 399, 43 Pac. 760; *Hanson v. Oppliger*, 121 Kan. 55, 245 Pac. 1012; *Cleaves v. Thompson*, 122 Kan. 43, 251 Pac. 429; *Turner v. Jarboe*, 151 Kan. 587, 100 P. 2d 675, relied on by defendant are readily distinguishable in point of fact and are not contrary to the rule stated in the Basye case, *supra*.

Defendant's demurrer to plaintiff's evidence was properly overruled. (See, also, *Hammond v. Insurance Co.*, 100 Kan. 582, 165 Pac. 291.)

Defendant next urges its motion *non obstante veredicto* should have been sustained. Its position is that finding 2 relieved it of all other alleged fraudulent representations and it again urges that finding was not a ground of rescission. The last part of the contention was treated earlier. The special findings disclose plaintiff did not understand the terms or provisions of the policy but relied on the false and fraudulent representations that he would receive ten percent on all money he paid to defendant and these payments would start after he made the third payment. So interpreted finding 2 is in complete harmony with plaintiff's testimony such interest would be paid on all amounts including the first and second premiums. Defendant did not move to strike finding 2 on the ground it was unsupported by evidence, that it was outside the issues or for any other reason. On the contrary it moved for judgment on

all findings are admitted as true. The findings as a whole did not overthrow the general verdict and compel judgment for defendant.

Defendant finally asserts the court erred in overruling its motion for a new trial. It is argued the court did not properly instruct the jury on the subjects of waiver and estoppel, contract or rescission and erred in refusing to give defendant's requested instructions. Upon careful analysis of each of these contentions we are satisfied no prejudicial error was committed. This is also true relative to the instruction which pertained to the testimony of other witnesses who had purchased policies by reason of the same or similar fraudulent representations made to them. The single purpose of showing motive or intent to defraud for which that testimony could be considered was properly guarded in the instructions. Defendant complains concerning the admission of certain exhibits. No reversible error is disclosed in that respect. Defendant argues the jury did not follow the instructions given and that its general verdict and special findings are contrary to the evidence. The contentions cannot be sustained on the record presented here.

The judgment is affirmed.