NOT DESIGNATED FOR PUBLICATION

No. 123,885

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

U.S. ENERGY EXPLORATION CORP.,
*Appellant*,

v.

DIRECTIONAL DRILLING SYSTEMS LLC,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; KRISTIN H. HUTCHISON and CHAD M. CRUM, judges. Opinion filed January 13, 2023. Reversed and remanded.

*Ryan M. Peck*, *Jeffery L. Carmichael*, and *Jonathan A. Schlatter*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellant.

*David E. Bengtson* and *Frank W. Basgall*, of Stinson LLP, of Wichita, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: In 2016, U.S. Energy Exploration Corporation (U.S. Energy) sued Directional Drilling Systems, LLC (DDS) for breach of contract involving assets in an oil and gas development project in Butler County (the Project). After more than a year of litigation, the parties agreed to settle. After signing a negotiated settlement agreement, the parties filed a stipulation of dismissal pursuant to K.S.A. 2021 Supp. 60-241(a)(1)(A)(ii). Less than a year later, U.S. Energy filed a motion to set aside the stipulation claiming DDS procured the settlement agreement through fraud or misconduct under K.S.A. 2021 Supp. 60-260(b)(2) and (b)(3). An evidentiary hearing was scheduled, but following the assignment of a new presiding judge, the district court cancelled the hearing and denied

1

the motion. U.S. Energy now challenges both the procedure and result of that decision. Because we find the district court erred by denying the motion without conducting an evidentiary hearing, we reverse the district court's judgment and remand for a hearing on U.S. Energy's motion.

FACTUAL AND PROCEDURAL BACKGROUND

*Introduction to Parties and Overview of 2016 Purchase Agreement*

In 2015, two companies—DDS and Empire Energy, Midcon, LLC (Empire)—agreed to purchase various assets necessary to initiate the Project from Source Energy LLC (Source Energy) for $2,437,027. The Project assets included producing and nonproducing oil and gas leases; saltwater disposal wells and pipelines; well logs; and land, seismic, and other geological data. According to the terms of the parties' Purchase and Sale Agreement (PSA), Empire would pay for and acquire an undivided 60% interest in the Project assets, and DDS would cover the remaining 40%.

Due to financial difficulties, DDS and Empire agreed to postpone the original closing date of their purchase by several months. They also amended the terms of the PSA to allow DDS the option of reassigning Empire's 60% interest to itself or a third-party buyer in the event that Empire failed to meet its financial obligations.

Per the terms of the amended PSA, DDS paid and closed on its portion of the PSA. Empire gave Source Energy a $25,000 promissory note to continue its contractual relationship with DDS and Source Energy. Source Energy then assigned 100% of the producing leases to DDS and held the assignments of the nonproducing leases in escrow pending Empire's payment. This agreement contemplated that after paying its portion of the amended PSA, DDS would assign Empire 60% of the producing leases, and Source Energy would transfer 60% of the nonproducing leases to Empire and 40% to DDS.

2

In the meantime, Empire assumed operations of the producing leases according to the terms of an operating agreement it entered with DDS, which the parties referred to as an "Exploration and Development Agreement" (E&D Agreement). The terms of the E&D Agreement governed DDS and Empire's joint ownership, development, and exploration of the leases, and any future leases acquired in the Project.

However, Empire was ultimately unable to fulfill its financial obligations, so DDS exercised its right to reassign Empire's 60% interest to another buyer. DDS offered U.S. Energy those interests and the option to "step into Empire's shoes," and U.S. Energy assumed Empire's role as provided in the amended PSA.

*2016 Lawsuit Between DDS and U.S. Energy*

At some point, DDS insisted that U.S. Energy sign an E&D Agreement. Throughout the underlying proceedings, DDS has maintained that its offer was contingent on U.S. Energy signing an E&D Agreement. U.S. Energy, on the other hand, adamantly denies it was required to sign an E&D Agreement and did not sign one.

DDS sent U.S. Energy a letter essentially stating that U.S. Energy's failure to sign an E&D Agreement prevented the companies from forming a contractual relationship. This dispute eventually culminated in U.S. Energy suing DDS and claiming, among other things, that U.S. Energy and DDS were parties to a joint venture or mining partnership. In addition to its joint venture claim, U.S. Energy claimed that DDS agreed to the creation of an area of mutual interest (AMI), under which the parties agreed to give each other an option to share any oil and gas leases that the other party acquired within a defined geographic area. U.S. Energy contended that DDS acquired oil and gas leases in the alleged AMI without telling U.S. Energy or allowing it to participate in the leases. U.S.

3

Energy also raised a breach of contract claim, arguing DDS wrongfully withheld the interpretation of the seismic data information.

DDS denied the existence of a joint venture, mining partnership, enforceable contract, or contractual duties. DDS also filed several counterclaims, arguing that because U.S. Energy failed to sign an E&D Agreement, it never obtained any right to participate in the Project. DDS also raised an alternative breach of contract claim, alleging that if the district court found U.S. Energy accepted its offer to assume Empire's interest in the Project, U.S. Energy's failure to sign an E&D Agreement constituted a breach of contract.

The parties litigated these matters for over a year, and the district court made numerous rulings throughout those proceedings. The district court denied U.S. Energy's request for summary judgment on its joint venture claim, finding it involved issues of disputed facts. And the district court also denied DDS summary judgment on its claim that the parties completely lacked an agreement regarding the ownership of the oil and gas leases, finding the parties were, at the very least, tenants in common.

Two days before trial was scheduled to begin the parties notified the district court that they reached a settlement agreement. The district court therefore canceled the scheduled trial. It still, however, filed a final amended pretrial conference order on April 25, 2018.

*Settlement Agreement and Stipulation of Dismissal*

DDS sent U.S. Energy an email detailing the terms of a proposed settlement agreement, which the parties eventually adopted. The email stated that "[a]ny oil and gas lease[s] purchased by either party, whether a new lease or an extension or renewal of an existing jointly owned undeveloped lease, will be owned 100% by the party that

4

purchased that lease free and clear of all claims of the other party." The settlement agreement also included the following provisions:

- The jointly owned producing leases would continue to be jointly owned and operated by U.S. Energy pursuant to the terms of a joint operating agreement;
- DDS would assign its 40% undivided interest in all of the unexpired jointly owned, nonproducing leases to U.S. Energy;
- DDS and U.S. Energy were each entitled to acquire, own, explore, develop, and operate leases in Butler County, free and clear of any and all claims by the other party; and
- Both DDS and U.S. Energy would waive and release each other from any and all liabilities, actions, claims, demands, or lawsuits, which either party may have had or have against the other party arising from or relating to the Project.

The settlement agreement also contained an integration clause, which provided the agreement was the "entire agreement" and that "no other understandings, representations, inducements, promises or warranties, verbal or otherwise, may be relied upon other than those set forth in this Agreement." The agreement lacked any representations or warranties regarding any of the parties' previously purchased leases.

U.S. Energy and DDS's representatives finalized the settlement agreement and did not seek the district court's approval of the agreement. The stipulation of dismissal succinctly provided, "As authorized by Kansas Rule of Civil Procedure § 60-241(a)(1)(A)(ii), Plaintiff U.S. Energy Exploration Corp. and Defendant Directional Drilling Systems, LLC stipulate to the dismissal of all claims in the above-captioned action with prejudice, with each of the parties to bear its own costs."

*New Lawsuit and Motion to Set Aside Dismissal*

Three months after the stipulation of dismissal was filed, U.S. Energy filed a new lawsuit with multiple allegations against DDS and Hiram W. Lewis III, including a claim that it was fraudulently induced to enter into the settlement agreement with DDS. Lewis was the Manager of Oil & Gas Operations for DDS. In that action, the district court initially granted summary judgment in favor of DDS on the U.S. Energy claim related to the AMI because there was no written contract supporting the claim. After a subsequent motion by DDS, the district court dismissed the entire action without prejudice, ruling that U.S. Energy first had to set aside the joint stipulation of dismissal before the court could address any of U.S. Energy's remaining claims.

*Motion Proceedings in Original Lawsuit*

After dismissal of the second lawsuit, U.S. Energy filed its motion to set aside the stipulation of dismissal in the original lawsuit. Relying on K.S.A. 2021 Supp. 60-260(b)(3), U.S. Energy argued that the stipulation was induced by fraud or misconduct because DDS engaged in fraud or misconduct detailed in U.S. Energy's motion:

- "DDS acquired at least 21 leases, what have been referred to herein as numerous 'Secret Leases,' between March 2017 and June 2017, all within the NW Butler County Project, and in total covering 3,277 acres of the Project."
- "At least 17 of the Secret Leases were acquired by DDS *prior* to the Settlement Agreement. . . . 18 of the Secret Leases are top leases or replacement leases covering approximately 2,598 acres of land covered by the jointly-owned undeveloped leases."
- "DDS and Mr. Lewis began negotiating to acquire many, if not all of the Secret Leases, prior to the date the Settlement Agreement was entered into."

- "US Energy did not know about or have any reason to know about the Secret Leases prior to entering into the Settlement Agreement."
- "DDS and Mr. Lewis concealed the Secret Leases from US Energy by not recording them (in some cases, for more than a year) or otherwise disclosing their existence to US Energy."
- "Many of the Secret Leases cover the same acreage as the Undeveloped Leases that US Energy was supposed to receive pursuant to the Settlement Agreement. . . . As a result of the Secret Leases, the undeveloped leases that US Energy was supposed to receive pursuant to the Settlement Agreement have lost value or are worthless."
- "The top leases were negotiated for and taken in breach of the right of first refusal owned by US Energy."
- "US Energy and DDS utilized and exploited the jointly-owned 3-D seismic data to identify areas and acreage to lease in the course of the scheme to acquire the Secret Leases, thereby secretly exploiting a [*sic*] valuable jointly-owned assets to the direct detriment of US Energy."

U.S. Energy alleges:

"This lengthy course of misconduct and fraud was deceptive, did not represent good faith in the performance of the parties' purported settlement, and it undermined the very essence of the purported settlement going forward. US Energy was not aware, nor could it reasonably have become aware, of this course of misconduct prior to the settlement and stipulation. When it became aware of the misconduct, it sought first to pursue claims in the 2018 Case and now to set aside the stipulation in the 2016 Case."

DDS contended that it did not have any duty to disclose any information regarding the leases while negotiating the settlement agreement because the parties were merely litigants in an adversarial proceeding. And DDS also argued that Lewis' testimony regarding other leases DDS purchased put U.S. Energy on notice that it needed to make

additional inquiries into the matter. DDS acknowledges it objected to discovery requests for the actual leases but faults U.S. Energy for failing to follow up in discovery to compel disclosure of those leases, or to make disclosure a condition of the settlement.

The district court held two preliminary hearings to, in part, determine whether U.S. Energy's claim warranted an evidentiary hearing. Following the lengthy oral arguments, the district court determined an evidentiary hearing was warranted. The district court acknowledged that U.S. Energy was requesting an extreme remedy. The district court also determined that U.S. Energy's motion was timely, and that fraud needed to be proved by clear and convincing evidence. Although the court found U.S. Energy had not yet provided sufficient evidence to establish fraud, it scheduled the matter for an evidentiary hearing to allow U.S. Energy the chance to make the showing but denied U.S. Energy's request for additional discovery.

*Motion for a Prehearing Ruling and Judgment Rendered*

Before this case proceeded to the scheduled evidentiary hearing on U.S. Energy's motion to set aside the stipulation, Judge Kristin Hutchinson replaced Judge Mike Ward as the presiding judge in this case. Around the time of this transition, DDS filed a motion requesting a prehearing ruling on U.S. Energy's motion as a matter of law.

In its motion, DDS argued that the district court could decide U.S. Energy's claim of fraud without conducting an evidentiary hearing because the record established that DDS did not have a confidential relationship with U.S. Energy or a duty to disclose any information:

> "The nature of the relationship between DDS and US Energy is undisputed—adversaries engaged in protracted litigation negotiating a settlement agreement to resolve that litigation. As a result, the Court can and should find as a matter of law that DDS had

8

no duty to disclose any information to US Energy in conjunction with the negotiation of the Settlement Agreement. Since there was no duty, there can be no fraud and US Energy's motion fails as a matter of law."

U.S. Energy contended that this argument ignored the facts of the case and the clear language of K.S.A. 2021 Supp. 60-260(b)(3), which provides three grounds for granting relief: fraud, misrepresentation, and misconduct.

After considering the parties' arguments, the district court announced its findings with very little explanation. The district court stated that it decided "to grant DDS'[s] motion on the duty to disclose" and "to overrule U.S. Energy's motion to set aside." The district court directed DDS to prepare a proposed journal entry of judgment. Judge Crum, who replaced Judge Hutchinson after her retirement, ultimately settled the parties' disagreement over the journal entry. The journal entry included the following findings:

- "DDS's Motion for Prehearing Ruling is granted."
- "US Energy's Motion to Set Aside Joint Stipulation of Dismissal is denied."
- "During the pendency of this case there was extensive discovery between DDS and US Energy and the parties ultimately negotiated and agreed to a settlement agreement and, pursuant to that agreement, the parties agreed to dismiss this lawsuit with prejudice."
- "Both US Energy and DDS were represented by counsel throughout this lawsuit."
- "The Settlement Agreement expressly provides that it constituted the entire agreement between the parties and that there were no other understandings, representations, inducements, promises or warranties, verbal or otherwise, that may be relied upon by either party."
- "US Energy knew, or reasonably should have known, all of the information that it wanted and needed to know when the Settlement Agreement was signed and that case was dismissed with prejudice."

9

- "The Settlement Agreement expressly provided that US Energy fully, finally and forever waived, released, and discharged DDS from any and all claims, liabilities, actions, demands or lawsuits under any theory."

- "This case was settled and dismissed with prejudice and this case is closed and will remain closed."

- "The Court does not express any position on whether US Energy has a viable claim for breach of the Settlement Agreement."

*Appeal*

U.S. Energy timely appeals the district court's order denying its motion to set aside the stipulation of dismissal.

ANALYSIS

I.      *Abandoned Claim*

In its motion to set aside the stipulation of dismissal, U.S. Energy argued that relief was warranted under K.S.A. 2021 Supp. 60-260(b)(2) and (b)(3). On appeal, however, U.S. Energy does not brief any argument under K.S.A. 2021 Supp. 60-260(b)(2) and thus abandons or waives such a claim. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

*K.S.A. 2021 Supp. 60-241(a)(1)(A)(ii) and K.S.A. 2021 Supp. 60-260(b)(3) and Standard of Review*

K.S.A. 2021 Supp. 60-241(a)(1)(A)(ii) permits the parties to a lawsuit to dismiss the lawsuit without a court order. And the district court here was not called upon to make any findings or conduct any review of the underlying settlement agreement. When the stipulation of dismissal was filed, the court had not made any factual findings whether

10

DDS owed any legal duty because there was no presentation of evidence to establish the relationship between the parties. That remains true to this day. No evidence has been presented establishing the nature and extent of the relationship between the parties.

K.S.A. 2021 Supp. 60-260(b)(3) permits a party, "[o]n motion and just terms" to obtain relief from a final judgment for "fraud, whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an opposing party." U.S. Energy argues it is entitled to relief because the settlement agreement and stipulation of dismissal were "procured by blatant misconduct, fraud and material misrepresentations of DDS and Mr. Lewis."

This court reviews a trial court's decision on a K.S.A. 60-260(b) motion for abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 937, 296 P.3d 1106 (2013). Such an abuse occurs when judicial action is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). "An appeal from an order denying a motion under K.S.A. 60-260(b) brings up for review only the order of denial itself and not the underlying judgment." *Ellis v. Whittaker*, 10 Kan. App. 2d 676, 677, 709 P.2d 991 (1985).

"A settlement agreement is a type of contract and is governed by contract law." *Farm Bureau Mut. Ins. Co. v. Progressive Direct Ins. Co.*, 40 Kan. App. 2d 123, Syl. ¶ 7, 190 P.3d 989 (2008). Ordinarily, whether a contract exists is a question of fact. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012); see also *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964-65, 298 P.3d 250 (2013) (whether party defaulted on contractual obligations—including inherent duty of good faith and fair dealing—is question of fact). The existence of fraud is also generally a question of fact. So appellate courts review these findings for substantial competent

11

evidence. See *Price v. Grimes*, 234 Kan. 898, 904, 677 P.2d 969 (1984) (contract); *In re Estate of Hessenflow*, 21 Kan. App. 2d 761, 774, 909 P.2d 662 (1995) (fraud).

The existence of a duty in a claim of fraud is a question of law upon which our review is unlimited. See *In re Estate of Pritchard*, 37 Kan. App. 2d 260, 272, 154 P.3d 24 (2007). Similarly, to the extent this analysis requires statutory interpretation, this court's review is unlimited. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). The law favors compromise and settlement of disputes, so absent a showing of bad faith or fraud, a party to "an agreement settling and adjusting a dispute" will be precluded from repudiating the agreement. *In re Estate of Thompson*, 226 Kan. 437, 440, 601 P.2d 1105 (1979). However, "[f]raud vitiates whatever it touches including final judgments and final orders as well as contracts." *Stegman v. Professional & Business Men's Life Ins. Co.*, 173 Kan. 744, 751, 252 P.2d 1074 (1953).

*The district court erred by overruling U.S. Energy's Motion without an evidentiary hearing.*

DDS asked the district court to overrule U.S. Energy's motion on the basis that there could be no fraud because DDS did not have any duty to disclose information to U.S. Energy. To prove constructive fraud, a party must show the existence of a confidential relationship and a betrayal of that confidence, or a breach of duty imposed by that relationship. A confidential relationship is not presumed, and the party asserting that such a relationship exists bears the burden of proving it. *Kampschroeder v. Kampschroeder*, 20 Kan. App. 2d 361, 364-65, 887 P.2d 1152 (1995). In DDS's view, the parties were simply opposing litigants. But the exact nature of the business relationship between the parties is not clear in the record and is disputed by the parties. There is no doubt the parties were engaged in some form of joint business pursuit, the nature of which was never determined, and that was the reason Judge Ward scheduled an evidentiary hearing. While DDS correctly describes, in part, the parties as opposing litigants, DDS's status as an opposing litigant does not empower it to engage in fraud or

12

misconduct. To the contrary, K.S.A. 2021 Supp. 60-260(b)(3) provides relief to an opposing litigant who is subjected to fraud or misconduct.

The district court did not hold an evidentiary hearing, yet the district court made a plainly factual finding that "US Energy knew, or reasonably should have known, all of the information that it wanted and needed to know when the Settlement Agreement was signed." Not only does this finding contradict U.S. Energy's express assertions, it also lacks any factual support in the record—because no evidence was presented. Given the allegations of fraud and misconduct detailed by U.S. Energy, and refuted by DDS, an evidentiary hearing is both necessary and unavoidable. In other words, under the facts alleged here, it is not possible for the court to determine as a matter of law what duty DDS may have owed U.S. Energy without evidence which establishes the nature and context of the parties' relationship.

The district court found that the settlement agreement "expressly provide[d] that it constituted the entire agreement between the parties and that there were no other understandings, representations, inducements, promises or warranties, verbal or otherwise, that may be relied upon by either party." DDS contends the integration clause prohibits U.S. Energy from now claiming it lacked necessary information or relied on DDS to provide additional information. However, "[f]raud vitiates whatever it touches including final judgments and final orders as well as contracts." *Stegman*, 173 Kan. at 751. The law favors compromise and settlement of disputes, so *absent a showing of bad faith or fraud*, a party to "an agreement settling and adjusting a dispute" will be precluded from repudiating the agreement. *In re Estate of Thompson*, 226 Kan. at 440. Although an integration clause generally provides that the written contract constitutes the entire agreement between the parties, a contractual waiver does not necessarily bar claims such as fraud. See *Osterhaus v. Toth*, 291 Kan. 759, 776, 249 P.3d 888 (2011).

13

Finally, DDS's argument to the district court focused primarily on whether there was fraud. K.S.A. 2021 Supp. 60-260(b)(3) plainly allows relief even when fraud is not found, as relief may be granted in cases where there is "misrepresentation or misconduct by an opposing party." Relying on *McKnab-Bess Oil Co. v. Commonwealth O. & G. Co.*, 142 Kan. 739, 52 P.2d 363 (1935), DDS asserts that the settlement agreement was a contract, so it could only be set aside based on a successful showing of fraud, "not mere misconduct." But *McKnab-Bess Oil Co.* did not make that ruling. That case simply held that the appellant failed to plead sufficient facts of "fraud, mistake, or omission" to warrant relief from the settlement judgment. See 142 Kan. 739, Syl. ¶ 2.

The district court here failed to address almost any portion of U.S. Energy's claim despite its sufficient pleading of fraud and misconduct and the existence of disputed or unresolved facts. *Smith v. Amazon.com Services LLC*, No. 21-CV-2260-JAR-TJJ, 2022 WL 179465, at *3 (D. Kan. 2022) (unpublished opinion) ("Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."). The court did not make any findings regarding the parties' specific actions, relationship, actual knowledge, or possible contractual or fiduciary obligations, so this matter must be remanded for additional proceedings. Cf. *In re Deepwater Horizon*, 786 F.3d 344, 364 (5th Cir. 2015) (finding unresolved factual issues should have prevented lower court from "discounting . . . substantial evidence of fraud without holding an evidentiary hearing").

The record shows that U.S. Energy sufficiently raised claims of fraud, misrepresentation, or misconduct in connection with the settlement agreement and stipulation of dismissal to warrant an evidentiary hearing. We find the district court abused its discretion by denying U.S. Energy's K.S.A. 2021 Supp. 60-260(b)(3) claim without first conducting that hearing. Thus, we reverse and remand the case to the district court.

14

Reversed and remanded.